Chief Justice Robertson
delivered the Opinion of the Court.
The County Court of Franklin having granted to the appellees a ferry across the Kentucky River, at Frank-for[5 an(j very near the authorized and accustomed landings of a ferry established by the- Legislature of Virl?86! and now owned by the appellant, who opposed the grant in the County Court — he now seeks a reversa^ °f the order, and insists on various assign-mentS'Of error.
An act of 1820, which-authorizes an appeal in such a case -to the Circuit Court, having been hitherto practically considered as merely cumulative, we overruled, an objection to the jurisdiction of this Court; and, being *243 of the opinion that an appeal might have been taken in the first instance, either to the Circuit Court, or this Court, we will, in a very summary manner, revise the' acts of the County Court.
The discretion vested in county courts to establish ferries is, when private rights may he injured, a judicial discretion, limited to a proper exercise, & subject to the control of this court. But this court will not interfere with its regular exercise, unless it appears to have been.clear* ly ahus.ed.
It is settled that* a ferry over a. stream within, the exclusive jurisdiction of this. State, (as, the Kentucky river) may be, granted' to one who does, not own the soil at either landing; and such grant does not divest the proprietor of tile soil of any.exclusive right..
The errors assigned embrace two propositions: first— that the ferry is not required for any public interest or purpose; and, second — that the appellees do not own the-landing on either side of the river.
First. In Lawless vs. Reese (4 Bibb, 309,) it was decided that the statute of 1796, respecting Ferries, gave to the County Courts an uncontrollable discretion in determining as to the expediency of establishing ferries over streams within the State. And although we are of the opinion that the discretion conferred is judicial, when private rights may be injuriously affected by its exercise, and'is not therefore unlimited, yet, as it is given chiefly for the public good, we should control the regular exercise of it only when it has been.clearly abused. No such abuse of' a sound and provident discretion has been shown in this case. On the contrary, the testimony rather tends to the deduction that the public may be benefitted by the establishment of the ferry. We cannot, therefore, on this ground, set aside the order.
Second. In Lawless vs. Reese (supra,) and in the same vs. the same (1 Bibb, 495,) this Court seems to have decided that a ferry may be granted by a County Court,, over a stream within the exclusive jurisdiction of this State, to a person who owns no land — provided the owner or owners of the landings shall have been notified of the application one month previously thereto. And that interpretation of the statute of 1796 (1 Stat. Law, 706,)-has been since recognized by the Court.
Though, upon such a small river as that of the Kentucky, only occasionally navigable by small vessels, a private right to land, of which it is a boundary, would constructively extend ad filum- medium-aqurn (the middle of the river,) yet the banks are subject to the jus publicum of a common transit and landing; and therefore, a grant by the Commonwealth, of an exclusive ferry franchise to one person for the benefit of all, and which only entitles the grantee to. the use of the banks for landings,. *244 should not be deemed a divesture of any vested and exclusive right of any other person who may own the soil at either point of landing — if, as has been decided, the owner of the land on such an interior stream has no exclusive legal right to be the grantee of the ferry.
Butin such case, the order granting the ferry will he erroneous, unless due notice of the application was given to the owner.
Where the grantees of a ferry across the Ken. driver were the heirs of a lot on the bank, the enclosure of which did not extend to the water, and their ancestor had more than thirty years possession of the lot, using also, the space between his enclosure and low watermark — his conduct implying that he claimed title to the landing, and no other person having claimed it during that time: held that it was not a sufficient objection to the order granting the ferry, that notice was not given to some other person as the owner of the landing, even tho’ it appeared that the lot, as originally sold by the proprietor of the town, did not extend down the bank, to the water.
*244 But if the appellees do not own the'landings of the ferry granted to them by the County Court, the order is erroneous, and the grant should be set aside, unless such notice of their application as the statute prescribes had been given to the owner or owners. The title to the land on either side of the river is, therefore, not material, excepting so far as the question of notice may be involved. Consequently, as we are of the opinion that either the appellees or the appellant should be considered as entitled to the landing on the south side of the river, we shall not now decide the question of title between them; because, if the appellees be the owners, no notice to the appellant was necessary, and, if he be the owner, he has had sufficient notice.
There has been no proof of notice to any person as owner or claimant of the north landing — the title to which seems to be involved in much doubt and perplexity.
Christopher Cammack, the father of some of the appellants, lived for more than thirty years on the lot next to that point, and including it, if the river be a boundary of the lot; and though his actual close never extended beyond the brink of a precipitous bank extending some distance to the ordinary water mark, yet he had a warehouse on the bluff, and used the intermediate ground as a pass-way to the river; and it does not appear that he was ever disturbed in such use, or that any other person ever made a similar use, or claimed a title to the land between high and low water mark. From those facts, had they been the only ones exhibited, we should not have doubted that Cammack’s lot is bounded by the river.
But a witness testified that, though the river is the boundary of the town lots generally, the one on which Cammack lived did not extend to the river; but that Wilkinson, as proprietor of the town, had reserved, at *245 - that place, the ground betwixt ithe top of the'bank and the river. And there is no countervailing evidence, either oral or documentary, for no other witness was examined concerning that point, and no plat of the town, or document of title in Cammack, was exhibited. That witness being accredited, and the facts thus attested by him being admitted, Cammack had no title unless his long use of the ground was in his own right, whereby he may have acquired a prescriptive title to it.— And, had it been clear that he had claimed the title to the land between his fence and the river, his long use of it and the apparent dereliction by Wilkinson, and by his alienee Holmes, would have authorized no other deduction than that of his (Cammack’s) legal right to it. But it is not certain that he ever claimed the title beyond his fence; it is, however, uncertain whether he did not claim title to it; and his conduct rather implied that he did, than that he did not, claim it. Upon this state of case, it would be certainly as difficult to decide that none of the appellees have any title to this landing, as that any other designated person has a better title. And in such a case, want of notice to any person as “the owner” of the land, should not, in our judgment, be a decisive objection to the order of the County Court; nor should the difficulty of ascertaining,’ with reasonable certainty, who the true owner is, or. of finding any other claimant than the appellees, present an insurmountable obstacle to the establishment of a ferry.
The facts conducing to show that if the grantees have not the title to the landing, it had been reserved by the proprietor of the town for the benefit of an old ferry owned by the appellant, who had notice of the application, that notice was held sufficient.
Moreover, we are strongly inclined to the opinion that, if Cammack was not the owner of this landing, it was reserved for the benefit of the ferry now owned by the appellant. Upon that hypothesis,- the notice to him should be deemed sufficient for the north as well as for the south side of the river. And the fact that the question of notice to any person, as the owner or claimant on the north side of the river, was not considered or touched on the trial in this Court, and does not appear to have been made in the County Court, tends, with no slight force, to the deduction that the appellant considered either himself or Cammack as entitled to the north landing. Upon these grounds, we are inclined to think *246 that there was no necessity for any other notice than . that which was given to the appellant.
The particular errors complained of should be shown by the assignment.
“The court erred in deciding in favor of the appellees, and in establishing the ferry,” held to be only an assignment of error in granting the ferry when the public convenience did not require it; and not one which will embrace any want of notice.
Besides, according to our interpretation of the assignments of error, want of notice has neither been suggested nor contemplated by the appellant. There can be no doubt that want of notice has not been assigned as error, unless it be constructively embraced by one of the following assignments:—
“ The Court erred in adjudging the appellees to be “ owners of the land on both sides of the river: in fact, “ they are not the owners of the land on either side of “ the river.”
“The Court erred in establishing the ferry on the defendants’ application: in point of fact, the convenience “ of the public did not require the establishment of a fer- “ ry; nor was there any necessity for the establishment “ of it. The Court therefore erred in deciding in favor “ of the appellees, and in establishing a ferry.”
The first of these assignments does not embrace the question of notice; it suggests only, that the appellees do not own the landing on either side of the river, and therefore concludes that the County Court erred in deciding that they are the owners of one or both of the landings; and such an error, as to title, is not here material; because the fact that the County Court erred in deciding upon the titles, does not show that there was error in establishing the ferry; nor imply that there was no notice, or an insufficient notice.
The residue of the assignment, as just quoted, complains, as we understand it, of but one error, and that, we think, is special, and does not include want of notice. Thus, understood, it means only that the County Court erred in establishing the ferry, because public convenience did not require it. But even if there can here be two separate assignments of error, the first of them being so general as to embrace every error that may have been committed, and might possibly be detected, is too vague and indefinite to require the Court, or the counsel of the appellees, to consider it as referring to or assigning any specific ground of objection. .The law of this Court requires the complaining party to “assign in writing the *247 particular error or errors of 'which he complains;” and declares, also, that “no other errors shall be ***** examined into by the Court.”
Now, though, when a judgment, or decree, or judicial order, is erroneous on the merits, and in no other respect, a general assignment may not only be proper, but would be the only, one that could be made; yet whenever there is any other and “particular” ground of objection, it may be specially assigned, and it is the duty of the complaining party, both to his adversary and .to this Court, if he intends to avail himself of it, to point it out by a special assignment in writing. If a general assignment, that “the Court erred,” should be deemed sufficient to embrace any such particular error,.and require the adverse party and the Court to hunt it out and consider it, then no special assignment would be necessary in any case, and the law of this Court, just quoted, would be nugatory and dead. And, in such a case as this, where, if the appellant be not virtually the owner of the north landing, he is seeking a reversal, not for any error predjudicial to himself, we should not endeavor to relax the law, or, by any very liberal interpretation, to make a general assignment of errors embrace -a particular error not specified.
Upon- the foregoing grounds, we do not feel that it is our duty to undo what has been doné by the County Court.
Wherefore, the order for establishing the ferry, must be affirmed.