# MILTON *vs.* HADEN.

[ACTION ON PROMISSORY NOTE GIVEN FOR RENT OF FERRY.]

1. *Franchise of ferry conferred by license or grant.*—Under the statutes of this State, from the year 1820 up to the present time, the right to keep a public ferry for toll has been a franchise which could not be exercised without license or legislative grant, and the unauthorized exercise of which has been prohibited under a penalty.

2. *Contract founded on illegal consideration.*—A contract, founded directly on an illegal consideration, although the illegal act is prohibited only under a penalty, is void.

3. *Estoppel against lessee from setting up invalidity of lessor's title.*—The lessee of a ferry, when sued on the note given for the rent, is not estopped from setting up a want of title in his lessor to the franchise.

4. *Presumption of ferry license from user for twenty years.*—The right to the exercise of a ferry franchise, when collaterally assailed, may be presumed from its uninterrupted use for twenty years; and when the fact of such continuous user has been established, the presumption therefrom arising is not impaired by proof that there was no license or legislative grant of the franchise.

5. *How to take advantage of variance.*—Under an exception to a general charge in favor of the plaintiff's right to recover, the question of variance between the note declared on and that offered in evidence may be raised in the appellate court.

6. *Form of complaint by husband and wife on note payable to wife as administratrix.* In an action by husband and wife, on a promissory note payable to the wife as administratrix, the plaintiffs must be described in the complaint as husband and wife at the time the note was given, or the complaint must show that they sue as administrator and administratrix, and that the note is assets in their hands: if the complaint shows that they sue as individuals, and does not describe them as husband and wife, and does not allege to whom the note is payable, a note payable to the wife as administratrix will not authorize a recovery by them.

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. ROBT. DOUGHERTY.

The complaint in this case was in these words:
"Anselm L. Haden, adm'r, and Caroline M. Haden, adm'x,

vs.

Wiley Milton, John D. Nance, David Weaver, and Wm. B. Milton.

"The plaintiffs claim of the defendants six hundred and forty dollars, due by promissory note made by them on

Milton v. Haden.

the 1st day of June, 1855, and payable on the 1st day of June, 1855, with interest thereon."

On the trial, as appears from the bill of exceptions, the plaintiffs read in evidence a note for $640, which was signed by all the defendants, dated the 1st June, 1854, payable twelve months after date, "to Mrs. Caroline M. Haden, administratrix of the estate of Benjamin J. Tarver, deceased," and purported to be given "for the rent of the ferry till the 1st June, 1855." The defendants then read in evidence a lease, by which Mrs. Caroline Haden, (then Tarver,) as administratrix of the estate of Benjamin J. Tarver, deceased, leased to the defendant Wiley Milton, for the term of one year from the 1st June, 1846, the public ferry across the Alabama river at Selma; which lease contained a stipulation, that the lessee should have the privilege of renewing it, from year to year, for ten years, on the payment of $640 annual rent; and proved, that the note sued on was given for the rent for the year ending on the 1st June, 1855. The defendants then read in evidence "the statements contained in the bill of exceptions taken in the court of county commissioners for Dallas county," in the matter of the respective petitions of John D. Nance and said A. L. Haden and wife, (the latter in their representative character as administrator and administratrix of said Benjamin J. Tarver, deceased,) for the establishment of a ferry across the Alabama river at Selma, and the grant of a license to the respective petitioners; "which statements were admitted as evidence by the agreement of the parties."

The petition of said Haden and wife stated, that their intestate, on the 1st September, 1845, purchased from one John Tipton, for the sum of $8,000, certain lands in the city of Selma, and on the east bank of the river opposite to the city; that a public ferry had been in existence and actual operation across the Alabama river at that point, for more than twenty years; that this ferry, with the privileges thereunto belonging, was included in the said purchase by Tarver from Tipton, and was the principal inducement to the purchase, the land itself being of little value; that Tarver took possession of said ferry under his

purchase, and continued in the occupation and control of it until his death, which occurred in the latter part of the year 1845 or the early part of the year 1846; that his widow administered on his estate, and leased the ferry to Wiley Milton, who was in possession when the petition was filed; that the petitioners had supposed that said ferry, which had been in existence for more than thirty years, and which was the only public ferry across the Alabama river at or near Selma, had been established by an authorized act of the legislature, but, on the fact of its establishment being lately questioned, they were not able to find any such act of the legislature. The petitioners insisted, that after the lapse of so long a time, a lawful grant of the ferry should be presumed; and prayed that the court, without prejudice to their existing rights, would grant them a license to keep said ferry, for the longest period authorized by the statute, for the benefit of their intestate's estate. On the hearing of the two petitions, the commissioners' court granted a license to said Haden and wife, and refused to grant one to Nance.

The plaintiffs then offered in evidence the deed from Tipton to said Benjamin Tarver, and the deposition of one J. D. Monk, who testified to the existence of the ferry as far back as 1836, and Tipton's possession of it at that time; and who appended to his deposition a diagram showing the different landings of the ferry at high and low water. "The defendants withdrew their special pleas, and submitted the case to the jury on the general issue and merits. This being all the evidence, the court charged the jury, that if they believed the evidence, they must find for the plaintiffs, for the full amount of the note, with interest;" to which charge the defendants excepted, and which they now assign as error.

JNO. T MORGAN, and JONA. HARALSON, for the appellant, made the following points:

1. The petition of Haden and wife admits that no ferry was ever established at Selma by act of the legislature. The keeping of the ferry without legislative authority was an indictable offense.—Clay's Digest, 513, § 27;

Code, § 1200. Having herself no authority to keep the ferry, Mrs. Haden could not lease it to Milton. The lease was a contract founded upon an act prohibited by statute under a penalty, and constituted the sole consideration of the note sued on. It is a settled principle of the common law, which has been recognized by numerous decisions of this court, that a contract, founded on an act prohibited by statute under a penalty, is void.—Stanley v. Nelson, 28 Ala. 514; Bragg v. Channell, 3 Ala. 275; O'Donnel v. Sweeney, 5 Ala. 468; Mayor of Tuskaloosa v. Lacy, 3 Ala. 618; McGee v. Lindsay, 6 Ala. 16; Carrington v. Caller, 2 Stew. 175; Fambro v. Gantt, 12 Ala. 298; Tenison v. Martin, 13 Ala. 21; Renfro v. Heard, 14 Ala. 24; Branch Bank v. Crocheron, 5 Ala. 250; Smith v. Ala. Life Ins. & Trust Co., 4 Ala. 558; Armstrong v. Toler, 11 Wheaton, 258; Chitty on Contracts, 571; McBlain v. Gibbes, 17 How. (U. S.) Rep. 232; Williams v. Gibbes, ib. 239; United States Bank v. Owens, 2 Peters, 257.

2. In this State, a ferry franchise cannot be acquired by prescription.—Driver v. Comm'rs' Court of Talladega, 3 Porter, 418.

3. The note offered in evidence did not support the complaint, and did not authorize a recovery by the plaintiffs.—Letondal v. Huguenin, 26 Ala. 554. If the husband was entitled to any interest in the note as husband, he should so frame his complaint as to rebut the legal presumption arising from the face of the note.—Logan v. Roland, 18 Ala. 310.

Wm. M. Byrd, contra.—1. The record does not show that there never was a a grant of a ferry license to Mrs. Haden or her former husband, and the statements of the petition set out in the bill of exceptions do not authorize the presumption that no license had ever been granted. In the absence of affirmative evidence on this point, all reasonable presumptions are to be indulged in favor of the validity of the contract.—1 Chitty's Pleadings, 221.

2. Conceding that the weight of American authorities establishes the principle, that a contract founded on an

illegal consideration, in whole or in part, is void; and that a ferry cannot be established, in this State, without license or legislative grant; and that the party who illegally establishes a ferry cannot make any valid contract for the recovery of tolls; it still does not appear that the plaintiffs in this action were not entitled to recover. The Code does not affect the validity of this contract, which was made before its adoption.—Mays v. Williams, 27 Ala. 267. If Milton saw proper, after the adoption of the Code, to give his note for the rent under the lease, it devolved on him to see that he did not make himself liable to the penalties denounced against one who "demands or receives toll for crossing at a ferry without license;" and if he did so, he cannot take advantage of his own wrong to defeat his contract. There is a distinction between statutes which impose a penalty for the purpose of prohibiting a contract, and those which impose a penalty for some other purpose.—Lewis v. Welsh, 14 N. H. 294. Where a principal is punished by a penalty, for an act done which is not *malum in se*, his agent is not liable for the penalty.—1 Bla. Com. 88; Bettis v. Taylor, 8 Porter, 564; Boyce v. Holmes, 2 Ala. 54; Sewall v. Jones, 9 Pick. 412; 3 Stew. & P. 13. Moreover, the defendant is estopped from setting up the invalidity of his lessor's title, while he holds possession under the lease.—Peacock v. Harris, 10 East, 106; Co. Litt. 47 *b;* Cro. Eliz. 362; 2 Wilson, 143, 208: 6 Term Rep. 62; 7 *ib.* 537; 8 *ib.* 487; 5 *ib.* 4; 6 Taunton, 333; 2 East, 467; 2 Vesey, 696; 11 *ib.* 344; Ld. Raym. 1552; 1 B. & A. 50; Holt, 489; 9 Bing. 45; 4 M. & S. 237; 6 Price, 157; 1 Bing. 147; 10 Bing. 549.

3. The proof authorizes the presumption of the grant of a ferry license, or that the same was legally established.—Gantt's Adm'r v. Phillips, 23 Ala. 276; Battles v. Holley, 6 Greenl. 145; 4 Strob. Eq. 103; 3 Man. & Ry. 329; Cowper, 102, 215; Skinner, 78; 1 Jac. & W. 159; 2 Vesey, 583; 3 Term Rep. 158.

4. The question of variance was not raised in the court below, but, on the contrary, was impliedly waived. The defendants withdrew their special pleas, and submitted

the case to the jury "on the merits." Under these circumstances, no objection should be here entertained, which, if it had been raised in the primary court, might have been remedied by an amendment.—Thompson v. Lee, 30 Ala.; Code, §§ 2401–05; 16 Mass. 480.

5. But there was no variance between the note offered in evidence and that declared on. A promissory note, made to the wife after marriage, may be sued on by husband and wife.—16 Mass. 480; 1 Chitty's Pleadings, 30; 1 Greenleaf's Ev. § 69; 2 Modern, 217; 2 Munf. 510; 4 Term Rep. 616; 2 M. & S. 393; 2 Wilson, 424; 1 Ad. & El. 74; 4 Barn. & Ad. 739; 1 ib. 218; 2 W. Bla. 1236; 1 H. Bla. 106. The same authorities show, that a promise to the wife, after marriage, is, in legal effect, a promise to husband and wife, or to the husband alone, according as the husband may elect to sue alone, or jointly with his wife; and that such promise will, in either case, support the declaration.

STONE, J.—Under the "act to reduce into one the several acts concerning roads, bridges, ferries and highways," passed December 21, 1820, as found in Toulmin's Digest, 391, power was given to the county courts "to establish ferries, and order them under such regulations as is hereinafter directed." Section 20, p. 398, declares, "that if any person or persons shall establish a public ferry, * * * contrary to the provisions of this act, he or they shall forfeit and pay five hundred dollars, * * * to be recovered by indictment or presentment by a grand jury," &c. On the 12th January, 1827, another act was passed, having the same title as that from which we have just quoted, and which retained verbatim the clauses above copied.—See Aikin's Digest, (2d edition,) p. 358, p. 363, § 26, p. 364, § 30. On the 2d February, 1839, the "act to extend the powers of the courts of roads and revenue in the several counties of this State," was passed. By that act, power to grant licenses for public ferries was conferred on the courts of roads and revenue; and it further declared, that "if any person shall presume to establish a public ferry, * * and receive toll for the use of

the same, without having obtained a license as prescribed by this act, * * * such person is hereby rendered liable to indictment, and, on being found guilty, shall be fined any sum the jury trying the offense may assess." Clay's Digest, 513, §§ 26, 27. By the Code (§ 1200) it is declared, that "if any person demands or receives toll for crossing any ferry, * * without a license therefor from the proper authority, * * * * he is guilty of a misdemeanor, and, on conviction, must be fined not less than twenty dollars." These extracts from our statutes show, that from the year 1820, to the present time, the right to keep a public ferry for toll has been a franchise, which could not be exercised without a license or legislative grant; and that the unauthorized exercise of such right has all the time been prohibited under a penalty.

[2.] There is no direct or express proof in this record, that the ferry at Selma ever was established in either of the modes above pointed out, until after this suit was brought. The note which is the foundation of this action was executed for the lease of the ferry privilege for one year, and upon no other consideration. Upon this feature of the case, we think the principle applies in its full force, that a contract founded on an act which the law prohibits under a penalty, is void.—Stanley v. Nelson, 28 Ala. 514, and other authorities on the brief of appellant's counsel.

[3.] It is contended for the appellee, that, as Milton went into the possession of the ferry under the lease from Mrs. Tarver, (now Mrs. Haden,) and has never been disturbed in his possession, he should not be heard to question her title. We admit the general rule, that a tenant is not permitted to dispute the title of his landlord. The principle, however, does not apply to this case. We have shown above, that a public ferry is a franchise, and that from the year 1820 to the present time, its exercise without license or legislative grant has all the time been prohibited under a penalty. To allow the principle to govern a case like the present, would be to sacrifice a sound legislative policy to the presumed allegiance which a tenant owes his landlord.

Milton v. Haden.

In the case of Satterlee v. Matthewson, 13 Sergeant & Rawle, 133, this question arose as follows: Elizabeth Matthewson claimed title to land under what is there called a Connecticut title. The laws of Pennsylvania, in whose territory the lands were, declared those Connecticut titles invalid. Satterlee went into possession as tenant of Mrs. Matthewson, and subsequently acquired a title to the premises, which had been derived from Pennsylvania. Mrs. Matthewson brought ejectment against Satterlee for the land; and the question was, whether the latter could deny the title of the former. It was held, that he could. The court, among other things, remarked, that " a settler under Connecticut could not pretend to an implied contract with the commonwealth, because he set up a title in direct opposition to the commonwealth." * * * " That landlords, claiming under Connecticut, had no right to expect from the courts of Pennsylvania the extension of a privilege, by virtue of which their tenants, who had purchased under a Pennsylvania title, should be estopped from defending themselves by that title."

In the later case of Miller v. McBair, 14 Serg. & Rawle, 382, Gibson, J., in delivering the opinion of the court, said, " A tenant may impeach his landlord's title, whenever he can show that he was induced to accept of the lease by misrepresentation and fraud."

In the present case, Mrs. Tarver, by leasing the ferry to Mr. Milton, impliedly, if not expressly, represented that she was the owner of the franchise; and it is impossible to resist the conclusion, that Milton would not have accepted the lease, if he had known the title to be invalid. See Lanier v. Hill, 25 Ala. 554. We hold, that one who usurps the right to keep a public ferry, in violation of our statutes, cannot claim the allegiance from his lessee which is due from a tenant to his landlord. There is, in this case, another clear ground on which to place our decision. One who usurps a franchise, and makes contracts based upon it, cannot enforce such contracts in the courts of the country.—See City Council of Montgomery v. Central Plank-road Co., at the last term, and authorities cited.

[4.] Another point made in the argument we feel it our duty to notice. Mrs. Haden, those under whom she claims title, and her lessee, had been in the uninterrupted possession of this ferry for near thirty years, when the note sued on in this case was executed. It is claimed for the appellees that, under these circumstances, it is our duty to presume that this franchise had been regularly granted. The appellants invoke the maxim, *nullum tempus occurrit reipublicæ*. The authorities on this question are not entirely in harmony. In 2 Bla. Com. 37, it is said, that franchises, "being derived from the crown, must arise from the king's grant; or, in some cases, may be held by prescription." At page 266, note 10, 2 Wendell's Blackstone, the subject of prescription is again treated, and several authorities are cited. It is there said, that "evidence of twenty years user as of right, against the owner of the fee and those deriving under him, was held sufficient, if unexplained, to authorize a jury to presume such a grant, even against the crown; and positive proof of the non-existence of such right, at any time before the twenty years, did not, of necessity, form any objection to such presumption." The citations sustain the annotator. 1 Moody & Mal. 400; 2 Bos. & Pul. 206; 11 East, 384. In Trotter v. Harris, 2 Younge & Jervis, 285, the simple question was the right to a ferry privilege. It was admitted, that it was a franchise which must be by royal grant, or license from the crown. The court held, that "from a user of thirty-five years, the jury might presume that a ferry had a legal origin."—See, also, Gibson v. Clark, 1 Jac. & W. 159, 162; Stark v. McGowen, 1 Nott & McC. 387, 395; Carroll v. Norwood, 5 Har. & Johns. 155, 161; Barclay v. Howell's Lessee, 6 Peters, 498, 512, 513; Harvie v. Cammack, 6 Dana, 242, 244; Duncan v. Beard, 2 N. & McC. 400; Vandick v. Van Buren, 1 Caines' Rep. 34; McArthur v. Carrie, in manuscript, and authorities cited. In this case, where the question of the right to the franchise is only collaterally presented, we hold, that from the uninterrupted use and occupation of the public ferry for twenty years, the presumption may be drawn that it had a legal origin.

Under the charge which was given in this case, it becomes necessary to decide whether this presumption is one which must be at all times left to the discretion of the jury, or whether it can ever become an absolute or *prima-facie* presumption. It is not necessary in this case to determine, whether the presumption is absolute or *prima-facie*. If it in fact be either, the legal effect, under the facts disclosed by this record, is the same. The single fact of uninterrupted use and enjoyment for near thirty years is proved on one side, and there is no proof which, in the least, contradicts or weakens this testimony. Proof, if such exist, that there was in fact no legislative grant or license, will not impair the presumption. The proof which can be effectual to overturn the presumption, must be addressed to the *character* of the use, enjoyment, or occupation; must tend to show that such use and enjoyment are not inconsistent with the right in another, or in the government. Want of original authority to exercise the franchise cannot in the least tend to establish this proposition. We have, then, the familiar principle of a *prima-facie* presumption, without any countervailing proof. In such case, the presumption becomes conclusive.

In McArthur v. Carrie, in manuscript, we considered the question of twenty years uninterrupted adverse use and possession of personal property under claim of title. We there held, that such possession vested in the holder a *prima-facie* title, and that such *prima-facie* title could not be overturned by proof that, in its inception, it was bad. That was a case not covered by any of our statutes of limitation, and rested alone on the presumption drawn from lapse of time. We think the same principle governs this case. There being, then, *no evidence* which could tend to overturn the *prima-facie* case made by the plaintiffs, there was, on this feature of the case, nothing but the credibility of the testimony to be passed on by the jury. The charge of the circuit court presented that question in a form free from objection.

[5.] The only remaining question is that of the variance between the complaint and the note. I have felt

inclined to doubt whether this question can be here considered as having been raised in the court below. On further reflection, we are unanimous in the opinion, that the charge makes it necessary that we should pass upon it.

[6.] The doctrine is certainly clearly settled, that in pleading it is always sufficient to describe a contract according to its legal effect; and that a promissory note, made payable to one who is at the time a married woman, is, in legal effect, payable either to the husband, or to husband and wife, as they may elect to bring the suit in his name, or in their joint names.—See 1 Chitty's Pl. 30; 1 Greenl. Ev. § 69; Philliskirk v. Pluckwell, 2 M. & Sel. 393; Ankerstein v. Clark, 4 Term Rep. 616; and other authorities on the brief of appellee. This suit, however, is not brought in the names of Mr. and Mrs. Haden, *as husband and wife*, but as individuals. To justify a recovery by them, it is not only necessary to read the note in evidence, but they are required to go further, and prove an independent fact, to-wit, that they sustain to each other, and did at the time the note was executed, the relation of husband and wife. There is no averment to let in this proof. This suit is brought in the individual right of the plaintiffs, and the complaint describes a note which is payable to the two by name. Under the complaint, without amendment, the note was not proper evidence; and hence we hold, that the proof did not justify a recovery by plaintiffs, described as they were in the margin.—Huguenin v. Letondal, 26 Ala. 552; English v. George, 30 Ala. 582; Agee v. Williams, 30 Ala. 636; Lewis v. Harris, 31 Ala. 689.

If the suit had been in the names of the two plaintiffs, describing them as husband and wife at the time the note was executed, or describing them *as administrator and administratrix*, and suing in that right; and if the complaint, on the last hypothesis, had contained on averment that the note sued on was assets in their hands as administrators of their intestate, there could then be no objection urged against the form of the suit.

For the single error above pointed out, the judgment is reversed, and the cause remanded.