## PROSSER v. WAPELLO COUNTY.

1. **Appeal:** BOARD OF SUPERVISORS. An appeal lies to the District Court from an order of the board of supervisors establishing a road; and upon the trial of such appeal the question as to the damages sustained by reason of the establishment of the road may be tried *de novo*.

2. **Evidence:** OPINION: DAMAGES. The opinion of a witness as to the amount of *damages* sustained by a party is not admissible. The rule admitting the opinion of witnesses, when properly qualified, as to the *value* of property, will not be extended.

3. **Ferry:** RIPARIAN RIGHTS AT COMMON LAW. A public ferry franchise can be conferred only by the government, and must be founded on grant, license or prescription. Ownership of the soil upon each side of the

stream does not confer the right to establish thereon, without grant or license, a public ferry at which tolls are charged. The owner may establish a private ferry for the convenience of himself and family, and at which he may ferry for a compensation fixed by contract, expressed or implied, when not forbidden by statute and when this does not injure or affect any established public ferry.

4. —— UNDER THE STATUTE. In establishing a ferry, preference should be given in awarding the franchise to the owner of the land on which it is established, if he is a proper person to receive and exercise the same.

5. —— RIGHT OF WAY. The granting of a ferry franchise does not authorize the holder thereof to use the land of another without his consent, or without making due compensation. Such authority may be secured by contract or by proper proceedings to confirm the right and compensate the owner for it.

6. —— PUBLIC HIGHWAY. The dedication or taking of land for a public highway does not, in cases where the owner retains the fee and the public have only an easement, deprive such owner of his preferable right to a ferry, if one is established.

7. —— A ferry license to a stranger will not authorize him, against the consent of the owner, or without compensating him therefor, to use the *termini* of the highway (certainly above high-water mark) for the purpose of fastening boats and receiving and discharging freights and passengers.

8. —— MEASURE OF DAMAGES. The earnings of plaintiff's ferry should not be considered in determining the measure of his damages by the establishment of another ferry upon his land without compensation.

*Appeal from Van Buren District Court.*

WEDNESDAY, APRIL 12.

EVIDENCE: PROOF OF DAMAGES: FERRY RIGHTS OF RIPARIAN OWNERS. Prosser is the owner of a tract of land bordering on the Des Moines river, opposite the city of Ottumwa, and had license to keep a ferry across the river from a point opposite Market street in that city. Davis and others petitioned the board of supervisors for the establishment of a public road through the land of said Prosser, commencing at Davis' ferry landing opposite Green street in Ottumwa, and running S. W. about 600

yards to a point in the present road leading up the river. Prosser filed his claim for damages, stating that he was the owner of the land, over which the proposed road would run, down to the bank of the Des Moines; that he is entitled, by reason of his riparian ownership, to an exclusive ferry right at said point, and that taking the said land will destroy this right, to his damage in the sum of $10,000. The appraisers assessed his damages at $50. The board of supervisors approved this appraisement and established the road. Prosser appealed to the District Court, and the venue of the cause was changed to Van Buren county.

The cause was tried in the District Court before a jury, who assessed Prosser's damages at $750. From this judgment the county of Wapello appeals to this court.

The only question submitted to the jury and tried was the amount of damages to which Prosser, as land owner, was entitled in consequence of the establishment of the proposed road.

Davis is the holder, by license, from the county, of a rival ferry franchise, as will be seen by reference to the case of *Prosser* v. *Davis, infra*, with which this stands connected in its facts. The proposed road was necessary to enable persons crossing at Davis' ferry to reach the existing public road without passing over and trespassing upon the lands of Prosser.

The other material facts, and the errors assigned — all of which relate to the ruling and proceedings of the District Court — will be found in the opinion.

*Knapp & Wright* for Prosser.

*M. J. Williams* and *Hendershott & Burton* for the county.

DILLON, J.—I. We are of opinion that Prosser had a right to appeal to the District Court from the proceeding

1. APPEAL: and decision of the board of supervisors. Upon
board of this appeal he could have the question as to the
supervi-
sors. amount of damages he would sustain by reason
of the establishment of the proposed road over and upon
his land, tried *de novo*. The court properly overruled the
motion of the county to dismiss the appeal. In this respect
its action is affirmed. *Umbarger* v. *Bean*, 15 Iowa, 256.

II. On the trial in the District Court, the county objected
to the following question, put to several witnesses: "State
2. EVIDENCE: what will be the damage to Mr. Prosser by the
opinion:
damages. laying out and establishing said road, aside from
any damage that would accrue to his ferry right or ferry
privilege; that is, what would be the *damage* to his said
lands and the improvements thereon?" The objection was
overruled; the county excepted; and material testimony
was elicited.

This action of the court was clearly erroneous. This, if
allowed, would make the witnesses perform the functions
of the jury. The farthest courts have gone is to allow
witnesses, otherwise properly qualified, to give opinions as
to the *value* of property. *Henry* v. *The Dubuque, &c., R. R.
Co.*, 2 Iowa, 288; *Dalzell* v. *City of Davenport*, 12 Id., 437.
No extension of the rule is allowable. There is a manifest
difference between proving *value* and proving *damages* by
the opinions of witnesses. As a direct authority against
the ruling of the District Court on this point, we refer to the
well-considered case of *Morehouse* v. *Mathews*, 2 Comst. (N.
Y.), 514; and see, also, *Dunham* v. *Simmons*, 3 Hill (N. Y.),
609; *Paige* v. *Hazard*, 5 Id., 603; and *Anson* v. *Dwight,
infra*, and authorities there cited.

III. The next point made by the county raises the
question as to the *nature* and *extent* of the rights of riparian
owners on the public water courses of this State with
respect to *ferries*. The questions arise both upon rulings
admitting testimony, and upon the instructions of the

court to the jury. Witnesses were asked this question: "If the plaintiff is entitled to a ferry privilege at the termination of said proposed road on the river as an incident to said land, and the laying out and establishment of said road would have the effect to transfer the use of said ferry to the public, what would be the loss or damage to Mr. Prosser?" One witness answered the question, $5,000, another $6,000, another $6,000 or $7,000.

Another witness was asked, "what will be the damage to the plaintiff (Prosser), by laying out said road and taking his ferry right therein?" He answered: "The damage Prosser would sustain by taking his ferry right would be $5,000 to $6,000." The plaintiff, who was examined as a witness, was permitted to answer the question, "What is the ferry privilege worth, to cross at the point where the new road is located?" The answer was, "I can't tell exactly, I have always considered that a good point to make a ferry, and that I should be damaged by laying out said road and giving the right to the public to have a ferry landing there, in the sum of $10,000."

The following interrogatory was propounded to the plaintiff: "What is the gross amount of ferry receipts annually on that line of communication?" His answer was: "The gross receipts would be about $2,000, the expenses $500 or $600."

Each of these questions and answers were duly objected to; the objections overruled, and exceptions properly taken; "the court holding," says the bill of exceptions, 1st, "that damages might be thus proved, and 2d, that the plaintiff (Prosser), by law, as a riparian owner, had a ferry right independent of the statute in the real estate sought to be condemned as a highway; that the laying out of said highway deprived the plaintiff of said right; that the same was property, and should be regarded by the jury in assessing the damages."

The same view of the law was taken by the court in its directions to the jury. The jury were told to consider Prosser's damages, "first, with reference to the land without reference to the ferry, and second, with reference to the damage done by interfering with his right of ferry, at the point where the new or proposed road is located or is to be located." With reference to this right of ferry the jury were charged thus: "If the land in dispute be on the banks of a navigable river, the Des Moines, then, as an incident to said land, Prosser owns and enjoys the *exclusive right* to keep and run a ferry at that point and land on said lands," &c. "In ascertaining the plaintiff's damages by the establishment of said road, you should consider all rights and interests of the plaintiff incident to said lands, and entering into and forming a part of its value, including the ferry right belonging to him as owner of said land."

At the plaintiff's request, the jury were instructed to include in the damages "the loss of the use of the said ferry privilege;" also, that "the value of the ferry privilege at that point will depend much upon the amount of ferry business to be done, and the amount of the proceeds thereof, and it is proper for the jury to consider the same in arriving at the plaintiff's damages." In relation to the above questions asked the witnesses, and the answers thereto (except the one in relation to the earnings of the plaintiff's ferry), it is sufficient to say that the court erred for the reasons stated in the second division of this opinion.

The other matters involved in these questions, as well as the question in relation to the earnings of the plaintiff's ferry, we will consider in connection with the charge of the court.

The court, in substance, charged the jury that Prosser, as riparian owner, not only had a ferry right but an exclu-

sive right to keep and own a ferry at that point; that the right was independent of the statute; that the laying out of the road in question would to that extent deprive him of this right; that this was property, and would be so regarded by the jury in assessing damages; and that in making such assessment it would be proper for the jury to consider the earnings of the plaintiff at his ferry near by and upon the same general line of travel.

\* These are new questions in this State, and are of the highest importance. These considerations, as well as the loose and inconsistent statement in some of the authorities and books on this subject, have led us to examine it with great care. It will conduce to a perspic-uous treatment to consider,

1st. *The right of riparian proprietors at common law and aside from statute in relation to ferries.;*

2d. *Their rights, in this respect, under our statute;* and

3d. *Whether these rights are extinguished or taken away by the mere establishment of a public highway.*

1st. *In relation to the right of ferry claimed to belong to the riparian proprietor at common law as an incorporeal hereditament:*

3. FERRY: riparian rights at common law. And here it is most essential to distinguish between a *public* ferry and a *private* ferry. Some confusion exists in many of the American cases from overlooking this distinction. The right to establish and keep a public ferry is, in law, termed a franchise, which is, in England, a royal privilege in the hands of a subject. 2 Bl. Com., 37; 3 Kent Com., 458. And it is perfectly clear that the franchise of a *public* ferry cannot be set up or exercised by any of the king's subjects without pre-scription, grant or license from the crown. Thus, says Chief Justice WILLES (Willes Rep., 512; *Blisset* v. *Hart*, note), "a ferry is *publici juris*. It is a franchise which no one can erect without a license from the crown. If a

second be erected without license, the crown has a remedy by *quo warranto*, and the former grantee has a remedy by action." And see further on this point: 2 Rol. Abr. 140; 3 Jacob Law Dict., 40; 1 Comyn Dig., *Action on case for Nuisance* (A) p. 428, 5 ed., title Piscary, p. 369; Woolrych on Waters, 41; *Benson* v. *Mayor, &c., of N. Y.*, 10 Barb. 223, 234, 245, per BARCULO, J.; *Nashville* v. *Shelby*, 10 Yerg. (Tenn.), 280; *Young* v. *Harrison*, 6 Georgia, 131; *S. C.*, 9 Id., 359; Id. 517; *Dyer* v. *Bridge Co.*, 2 Port. (Ala.), 296; and see authorities next below cited.

And it is beyond dispute, in the English law, that a second *public* ferry cannot be set up without a license, even though the person *owns the soil on both sides of the river.* The common law rights of riparian proprietors, in this respect, are thus stated by Sir MATTHEW HALE, in his *De Jure Maris*, a work, to use the language of Chancellor KENT (3 Com., 412, 426), of "great and accurate learning, and a text-book of the highest authority." Its varied and exhaustive learning well merits this high eulogium. Sir MATTHEW says: "The king, by ancient right of prerogative, hath had a certain interest in many *fresh* rivers, even where the sea doth not flow and reflow, as well as in the salt, or arms of the sea; and these are those which follow: 1st. A right of franchise or privilege that no man may set up a common (public) ferry for all passengers without prescription time out of mind, or a charter from the king. He (*the owner*) may make a *ferry for his own use or the use of his family, but not for the common use of all the king's subjects passing that way.*" And he proceeds to give the reason thus: "Because it doth in consequence tend to become a common charge, and is become a thing of public interest or use, and every man for his passage pays a toll which is a common charge, and every ferry ought to be under public regulation; that is, that the owner give attendance at due times, keep a boat in due order, and take but a reasonable toll;

for if he (the ferryman) fail in these, he is finable." (See Cow., 536, *note*, where the *De Jura Maris* is, in part, reprinted.) To same effect, Woolrych on Waters, 46; 3 Bl. Com., 219.

That a party cannot set up a *public* ferry franchise, even on his own land, without the consent of the State, see also the authorities above cited, and, particularly, *Young* v. *Harrison*, 6 Ga., 131; *S. C.*, 9 Id., 359; *Nashville* v. *Shelby*, 10 Yerg., 280; 5 Id., 189; *Sparks* v. *White*, 7 Humph. (Tenn.), 86; *Trustees, &c.*, v. *Tatman*, 13 Ill., 29; *Pipkins* v. *Winans*, 2 Dev. (Law), 402, per HENDERSON, Ch. J.; *Cooper* v. *Smith*, 9 Serg. & Rawle, 33; *Murray* v. *Menefee*, 20 Ark., 560; Id., 573.; *Milton* v. *Hoden*, 32 Ala., 30; Dane Ab., ch. 67, p. 653; and well considered case of *Stark* v. *McGowan*, 1 Nott & McCord (South Car.), 387; *Mills et al.* v. *St. Clair County*, 2 Gilm. (Ill.), 197, affirmed by Supreme Court United States, 8 How.,.569; *Stark* v. *Miller*, 3 Mo., 470; *Gales* v. *Anderson*, 13 Ill., 413; *Bush* v. *The Peru Bridge Co.*, 3 Porter (Ind.), 21; *The People* v. *Mayor, &c., of N. Y.*, 32 Barb., 102; *Somerville* v. *Weinbish*, 7 Gratt. (Va.), 205; *Norris* v. *The Farmers', &c., Co.*, 6 Cal., 509; *Taylor* v. *R. R. Co.*, 4 Jones (Law), N. C., 277 *Johnson* v. *Erskine*, 9 Texas, 1.

These authorities abundantly establish that, in this country, a ferry franchise must be conferred by the government; must be founded upon a grant or license, or upon prescription which presumes the existence of such grant or license; that ownership of the soil will not confer the right to set up or exercise the franchise; that the most such riparian ownership can do is to authorize the proprietor to establish a ferry for his own convenience and that of his family, or, at farthest, to ferry not for *tolls*, that is, for a fixed price independent of contract, but upon a contract express or implied, when not forbidden by statute, and when this does not injure or affect any established public ferry.

These are the measure of the rights of a riparian proprietor in respect to ferries, with the addition, under our statute, as will be shown under our next division, of a preferable right to the franchise, if the public authorities conclude to authorize the erection of a public ferry.

2. *As to the ferry rights of riparian owners under the statute.* The board of supervisors have power to license as many

4. —— ferries within their respective counties as may
under the
statute. be needed; to prescribe rates of ferriage and otherwise regulate the same. Rev., §§ 1200, 1201.

It is there declared, that in establishing a "new ferry, preference shall be given to the owner of the land," but if, upon notice, "he fails to make application for a license, or if he is an improper person to receive the same, it may be conferred upon any other proper applicant." Rev., § 1203.

This, in addition to his common law rights as above defined, is the extent of the ferry rights, in this State, of the riparian owner. He has not a ferry franchise, but simply the *preferable right*, if a proper person, to the franchise of a public ferry, if the government or the board of supervisors, exercising authority therefrom, sees fit to establish such a ferry. That this is merely in affirmance of common law principles, we refer to the observations and authorities above, and particularly to *Cooper* v. *Smith*, 9 Serg. & R., 33; *Pipkin* v. *Wynus*, 2 Dev. (Law), 402, 404; *Stark* v. *McGowan*, 1 Nott. & McCord, 387; *Young* v. *Harrison*, 9 Geo., 359; *S. C.* 6 Id., 131; *Nashville* v. *Shelby*, 10 Yerg., 280; *Gales* v. *Anderson*, 13 Ill., 413. While most of the States recognize the *priority* of rights in the riparian proprietor to a ferry, if the proper authorities deem it necessary to establish one. (*Cloyes* v. *Keats*, 18 Ark., 19; *Murray* v. *Menefee*, 20 Id., 561; *Memphis* v. *Overton,* 3 Yerg., 387; *Allen* v. *Farnsworth*, 5 Id., 189; 10 Id., 280; *Sparks* v. *White*, 7 Humph., 86; *Lawless* v.

*Rees,* 1 Bibb, 495; *S. C.,* 4 Id., 309; *Trustees* v. *Boon,* 2 J. J. Marsh, 225; *Trustees* v. *Wagnon,* 2 A. K. Marsh, 379; *Harvie* v. *Cammack,* 6 Dana, 242; Angell on Tide Waters, 171–178, and authorities, *supra*), yet the legislature may authorize the grant to be made to others than the riparian owner.

But the grant of a ferry license does not authorize the holder thereof to use the land of another without his con-

**5. ——** sent, or without first making due compensation.
**right of way.** And, under our statute, if the right is conferred upon another than the owner, he must obtain the consent of the owner or condemn the right and compensate him for it. In this way both the owner and public are protected, and the case of *Bowman* v. *Wathens,* 2 McLean, 376, relied upon by the plaintiff, when critically examined, was probably intended to decide, not that the franchise could not be conferred on another than the riparian owner, but that the *right to apply* for such a franchise could not be taken from him and conferred upon another without compensation. While upon this subject, we may remark, that it is laid down in an old case in Saville's Reports (23 Eliz.), p. 11, "that he who has the privilege of a ferry ought to *own* the land on both sides of the river; for he cannot land upon the soil of another without his consent." But to this extent, this is no longer law. This will appear, by reference to the case of *Peter* v. *Kendal,* 6 Barn. & Cress., 703 (1827), in which it was decided that, while the owner of the ferry must have the right to use the land for the purpose of embarking and disembarking passengers, he need not necessarily *own* the soil. HOLROYD, J., then says: "I think that what is laid down in Saville is not law, to the extent to which it is there stated. The owner of a ferry must, as an incident to the ferry, have such right to use the land on both sides as to enable him to embark and disembark passengers; but he need not, for that purpose, have

any *property* in the soil.   It is sufficient if he has the right to use the land, for all the purposes of the ferry." And to the same effect is the opinion of BAYLEY, J., in the same case.

Our conclusion then is, that the riparian owner has not, either at common law or under our statute, the right without a license to erect a public ferry ; and that his only right as such owner is to keep a private ferry under the restrictions and limitations before stated, that is, when not prohibited by law, and when it does not interfere with an established ferry, and to have priority (being a suitable person) if a new public ferry should be established.   These views, it will be seen, are very different from those taken by the court below in its rulings on the trial; and those rulings were therefore erroneous.

But of these rights, though they are much more limited than the plaintiff contended for and the court below supposed, the riparian owner cannot be deprived without just compensation.   In point see *Young* v. *Harrison*, 9 Ga., 359 ; *S. C.*, 6 Id., 131 ; *Cooper* v. *Smith*, 9 Serg. & R. 33 ; *Pipkin* v. *Wynus*, 2 Dev. (Law), 402 ; *Bowman* v. *Wathell*, 2 McLean, 376.

3. This brings us to the next question, and that is, *whether the location of a county road on the land does, to the*

6. —— *extent of its width on the bank of the river, deprive*
Public
highway. *the land owner of his riparian rights as above defined.*

And here we feel compelled to yield our doubts to the almost if not quite uniform current of authority, and to hold that it does not.   The argument is this: By the location of the road, the public acquire simply the right of way over the soil, the bare right of passage and its incidents, nothing more. *Deaton* v. *Polk Co.*, 9 Iowa, 594; *Trustees, &c.,* v. *The Auburn, &c., R. R. Co.*, 3 Hill N. Y.,

567; *Sir John Lade* v. *Shepherd*, 2 Strange, 1004; *Mayor, &c.,* v. *Ward*, 1 Wils., 110, 111.

The property or freehold *still remains in the owner of the land;* how completely so, the cases last cited, with others there referred to, strikingly illustrate.

This question has arisen in several cases, and, among others, in *Pipkins* v. *Wynus* before cited, and which overruled *Rayner* v. *Dowdy*, 1 Murph., 279. Speaking of this subject, HENDERSON, Ch. J., says: " For the uses and purposes of a highway it (the highway) is the sovereign's — the public's — for all other purposes it is the former proprietor's. The right of using it as a landing place for a ferry has never been taken from him; and although there is scarcely a perceptible difference between stepping from a boat on the land and stepping from land to land, yet that has never been taken from the former proprietor for such purposes, as he has never been compensated for the right (limited as above stated) of transporting persons across the water course, as that was not considered when the price of taking the land for a highway was fixed, and although it is of but little value without the franchise, yet his ownership of the land gives him the *preferable right* to call for the franchise when the ferry becomes necessary. This right is valuable, for, unless there are good reasons to the contrary, the sovereign must grant it to the *owner*, as sovereigns are bound to be just."  *  *  *  *  " If it be asked what is to be done if the owner of land, where a ferry is necessary, refuses to receive the franchise, it is answered pay him for the land and grant it to another."  *  *  *  *  " Let it not be taken for a road and used as a ferry." It was accordingly held that compensation must be made to the owner of the fee for the use of the soil for the ferry right, although there is a public road leading to the river on both sides.

And such is substantially the decisions in Tennessee. *Memphis* v. *Overton*, 3 Yerg., 387, and in Pennsylvania. Thus *Chambers* v. *Furey*, 1 Yeates (1792), 167, it was decided that the dedication or laying out of ground as a public road gave no right to the defendants, the owners of a ferry, to land upon or receive freight from the plaintiff's freehold on the banks of a navigable river without his consent. That the owner of a ferry had no right to land his passengers or boat on a public highway without the consent of the owner of the soil. See, also, *Cooper* v. *Smith*, 9 S. & R., 31 (1822), not even (it was held in a subsequent case) at the terminus of a highway between high and low water mark. *Chess* v. *Manoun*, 3 Watts, 219 (1834); and see *Bird* v. *Smith*, 8 Id., 434; also, the thoroughly considered case of *Pearsall* v. *Post*, 20 Wend., 111–131, in which the doctrine of the Pennsylvania cases above cited is approved. There is a *dictum contra* per BAILEY, J., in *Peter* v. *Kendal*, 6 Barn. & Cress., 703.

Whether the decision in *Chess* v. *Manoun*, above cited, is reconcilable with *McManus* v. *Carmichael*, 3 Iowa, 1, is a question of some difficulty. See, on this subject, *Prosser* v. *Davis, infra.*

Without committing ourselves to the entire correctness of all the positions taken in these cases, which we have referred to as illustrating the subject, we feel free in holding:

1st. That the dedication or taking of land for a public highway does not, in cases where the owner retains the fee, and the public have only an easement, deprive such owner of his preferable right to a ferry, if one is established.

2d. That a ferry license to a stranger will not authorize him, against the consent of the owner, or without compensating him therefor, to use the *termini* of such highway, certainly above high-water mark (see, on this point, *Prosser* v. *Davis, infra*), for the purpose of fastening boats and of receiving and discharging freight and passengers. Such a

Prosser v. Wapello County.

use is not a public use, so much as it is a use by the licensee or holder of the franchise for his own gain and advantage. Like the use of an ordinary road for railroad purposes, such a use for ferry purposes would be an additional burden or servitude, for which compensation must be made to the owner. *Milburn* v. *Cedar Rapids, &c.,* 12 Iowa, 246, 259. Forcibly illustrative of this question, see *Mahon* v. *R. R. Co.,* 24 N. Y., 658; *Carpenter* v. *R. R. Co.,* 24 Id., 655; *Wager* v. *R. R. Co.,* 25 Id., 526; *Bissell* v. *New York Central R. R. Co.,* 23 Id., 61; *Fletcher* v. *Auburn and Syracuse R. R. Co.,* 25 Wend., 462; *Davis* v. *Mayor,* 14 N. Y., 526; *Williams* v. *New York Central R. R. Co.,* 16 Id., 97–106; reviewing Chief Justice GIBSON's opinion, *contra,* in *Philadelphia* v. *R. R. Co.,* 6 Whart., 25; and see where owner parts with fee. *Aldrich* v. *Wallace,* 8 Dana (Ky.), 289; 16 N. Y., 97; *arguendo, Wager* v. *Troy Union R. R. Co.,* 25 N. Y., 526–533.

It follows, that the court erred in supposing that the 8. —— establishing of the road would deprive the land measure of damages. owner of his riparian ferry right; and it erred, consequently, in directing the jury to allow him for such supposed deprivation.

For the same reasons, it erred also in allowing evidence to be given, and in directing the jury to consider the earnings of the plaintiff's ferry, in ascertaining and assessing the damages in the proceeding. See *Mills* v. *County of St. Clair,* 2 Gilm. (Ill.), 197, 237.

Questions relative to the value of the riparian right of Prosser to a ferry are out of place in a proceeding intended to, and which can only determine the *quantum* of damages to which the land owner is entitled for the simple and bare right of way or easement of passage by the public.

Reversed.