## A. J. WARD ET AL. v. R. B. HUBBARD, GOVERNOR.

### (Case No. 1578.)

1. VENUE — JURISDICTION.— Remedies are subject to legislative control; hence an act which gave jurisdiction to the district court of Travis county, before a cause of action had accrued, when that court could not have exercised jurisdiction under any general law, on account of the residence of the defendant and the subject-matter of the controversy, was not violative of the constitution. Nor would the act have violated the constitution had it been passed after the accrual of the cause of action. Citing McMillan v. Sprague, 4 How. (Miss.), 647.

2. PARTIES — OFFICIAL BOND.— Where a statutory bond was required to be made payable to the state of Texas, but was made payable "to Edmond J. Davis, governor of the state of Texas," it was held that suit thereon could be maintained in the name of the governor for the use of the state.

3. PENITENTIARY, LEASE OF.— See opinion for facts under which a penitentiary lease, which was to continue for the period of fifteen years, was made to terminate at an earlier period, and leaving both the state and the lessees in

Argument for the appellants.

the same relation with reference to their respective rights under the contract that would have existed had the lease terminated by lapse of time.

4. STATUTORY BOND.— While a statutory bond must in its character be a substantial compliance with the statute, yet to render it void for want of conformity with the statute, it must be made so by express enactment, or else be a fraud on the obligors by color of law, by an evasion of the statute, or be more onerous on the obligors than the statute requires.

5. ARCHIVES — EVIDENCE.— Under articles 65 and 2720, Revised Statutes, the inventory and appraisement made under the direction of the governor in resuming control of the penitentiary was properly an archive in the office of the secretary of state, and a copy thereof, properly certified under his hand and seal, was admissible in evidence.

APPEAL from Travis. Tried below before the Hon. James H. Burts, Special Judge.

On September 7, 1878, appellee, as governor of the state, for the use of the state, brought this suit against appellants and their sureties upon a lease and bond, executed and given by them as lessees of the state penitentiary.

Appellants and sureties joined issue, appellants claiming that the state, on final settlement and adjustment, was justly indebted to them in a large amount over and beyond what they were indebted to the state, and sought to recover the same by cross-bill or reconvention.

At the October term, 1880, the cause was tried, resulting in a verdict and judgment against appellants for $15,000, and in favor of the sureties, who were discharged.

The points made are sufficiently shown in the opinion.

*Davis & Ruggles* and *Hancock & West*, for appellants, on the proposition that suit on the bond could not be brought in the name of the governor, cited: Gen. Laws, vol. 7, pt. 2, p. 14; Act 22d March, 1871, sec. 1, cl. 7–9, said act; 2d vol. Pasch. Dig. (4th ed.) of Laws, art. 7193, p. 1477; art. 7198 (c), p. 1478 (a); Gen. Laws, vol. 7; Act June 7, 1873, p. 217; Aulanier *v.* Governor, 1 Tex., 653; Lawton *v.* The State, 5 Tex., 272; Warren *v.* The State, 21 Tex., 510; Burnett *v.* Henderson, 21 Tex., 588; Nabors *v.* Governor, 3 Stew. & Port. (Ala.), 15; Calhoun *v.* Lunsford, 4 Port. (Ala.), 345; Northampton *v.* Elwell, 4 Gray (Mass.), 81; Mayberry *v.* State, 1 Stew. (Ala.), 266; Matthews *v.* Offly, 5 Sumn., 105; State *v.* McElroy, 9 Mo. App., 580.

That no suit could be brought on the bond until the termination of the lease fifteen years after its date, they cited: Acts 1871, pp. 14–17; 1876, pp. 193–6; 45 Tex., 355; Macauley *v.* Weller, 12 Cal., 500; Macauley *v.* Brooks, 16 Cal., 11; California *v.* McCauley,

15 Cal., 429; Hall v. Wisconsin, 13 Otto, 5; Davis v. Gray, 16 Wall., 203; Cooley on Const. Lim. (4th ed.), top p. 344, n. 2, marg. p. 281; Sedgwick on Stat. & Const. Constr. (2d ed.), pp. 580–586.

*A. J. Peeler*, for appellee, on the proposition that the suit was properly brought in the name of the governor, cited: Benton v. Woolsey, 12 Pet., 27; Commonwealth of Kentucky v. Dennison, Governor, etc., 24 How., 66; Governor v. Allbright, 21 Tex., 753; Rose v. Governor, 24 Tex., 503; Allbright v. Governor, 25 Tex., 687; Governor v. Burnett, 27 Tex., 33; Power v. State, 41 Tex., 102.

That resumption of control of the penitentiary by the state was proper, and no right of action accrued to the appellants therefrom, he cited: Bates v. Republic, 2 Tex., 617, 618, 619; Chevallier v. State, 10 Tex., 315; United States v. Thompson, 98 U. S., 486, 489; United States v. Boyd, 5 How., 29; Reeside v. Walker, 11 How., 272; Michigan State Bank v. Hastings, 1 Doug., 225, 227; People v. Talmage, 6 Cal., 256; State v. Northern Central R. R. Co., 18 Md., 193; State v. Balto., etc., R. R. Co., 36 Md., 519; Raymond v. State, 54 Miss., 562; State v. Leckie, 14 La. Ann., 636; Hosner v. DeYoung, 1 Tex., 769; Houston v. Perry, 2 Tex., 51; Borden v. Houston, 2 Tex., 601, 611; Rose v. Governor, 24 Tex., 504; State v. Hill, 54 Ala., 67; 86 N. C., 51; State v. Ward, 9 Heisk. (Tenn.), 100; State v. Board of Pub. Works, 36 Ohio St., 409.

WATTS, J. COM. APP.— In this case the record is voluminous, containing one thousand and fifty-three pages; owing to that fact, as a matter of convenience each proposition presented by counsel of appellants which is deemed material will be considered in the order presented.

Appellants' first proposition under their first and second assignment of errors is as follows:

"It appearing affirmatively from the face of the appellee's pleadings that no one of the parties sued are residents of Travis county, where the suit was brought, and that the contract or obligation sued on was to be performed at Huntsville, in Walker county, Texas, and not in Travis county, the district court of Travis county had no jurisdiction to hear the case, and the special exceptions of the appellants' pleading and setting forth this defect of jurisdiction, apparent on the face of the appellee's pleadings, should have been sustained."

To that proposition it can be answered, in the first place, that the act of 1876, providing for the resumption of the penitentiary by the state, authorized either the state or lessees, or both, to institute suits

in the district court of Travis county "for the enforcement or adjustment of any right or claim or the recovery of any balances between the state and said lessees." Gen. Laws 1876, p. 194, sec. 4.

If that act had been passed after the cause of action accrued, still it would not have been violative of the constitution. Generally, remedies are subject to legislative control; and so long as an ample remedy is furnished, the obligation of the contract is not impaired by any change of remedy. McMillan v. Sprague, 4 How. (Miss.), 647; Wade on Retroactive Laws, sec. 203, and authorities cited.

In the second place, the bond which in part formed the basis of the suit was by express terms payable "at the treasury of said state." By the provisions of the constitution and statutes the treasurer of the state is required to reside and keep the treasury at the capitol of the state. And we judicially know that the capital of the state was at the time of the execution of the bond, and still is, at the city of Austin in Travis county.

And in the third place, as was recited in the order of the court, made and entered May 24, 1880, appellants "waived and abandoned all general and special exceptions to plaintiff's petition theretofore made." Thereafter no such exceptions were taken or acted on by the court.

We conclude, therefore, that the above proposition cannot be maintained.

As their second proposition under the first and second assigned errors, appellants present the following:

"The act of 22d March, 1871, under which the contract of lease and bond was executed, prescribed the character of obligation required by the state of the lessees; the bond under consideration not being payable to the corporation known as the state of Texas, as expressly required by the above act, was not a statutory bond drawn in accordance with the provisions of the law providing for its execution, and being payable to another corporation known as the governor of Texas, could not be sued on by the appellee by virtue of his being the executive of the state of Texas; but he must show a title to the bond by assignment or otherwise, before he could maintain an action on it, the bond upon its face being payable to another person, and no assignment from that person being alleged or shown, and no statute being shown authorizing the execution of a bond in the form in which this bond is executed, and no law being shown authorizing a suit on such a bond."

True, the act which authorized the governor to lease the state

penitentiary also required him to take a bond with security, payable to the state of Texas, in amount and conditioned as therein specified. Gen. Laws 1871, p. 15, sec. 1.

The bond taken was payable to "Edmund J. Davis, as governor of the state of Texas, and to his successors in office, at the treasury of said state."

This suit was brought in the name of R. B. Hubbard, governor of the state of Texas, for the use of the state, and based upon the bond and written lease. As heretofore shown, appellants waived and abandoned all general and special exceptions to the petition. Hence, the real question for consideration is this: Will the suit as brought be considered as so defective as not to sustain the judgment? The allegations in the petition, as well as the accompanying exhibits, very fully show the whole transaction, and the several acts of the legislature under which the successive steps had been taken, which had resulted in the suit.

In Commonwealth of Ky. v. Dennison, Governor, etc., 24 How., 97, Chief Justice Taney said: "In the case of Madrazo v. The Governor of Georgia, 1 Pet., 110, it was decided that in a case where the chief magistrate of a state is sued, not by his name as an individual, but by his style of office, and the claim made upon him is entirely in his official character, the state itself may be considered a party on the record. This was a case where the state was the defendant; the practice where it is plaintiff has been frequently adopted of suing in the name of the governor in behalf of the state and was indeed the form originally used, and always recognized as the suit of the state." See, also, Benton v. Woolsey, 12 Pet., 29.

Here the action is in the name of the governor for the use of the state; the bond was made payable to the governor in his official capacity, and he executed the lease in the same way. The beneficiary interest of the state is fully disclosed by the petition and exhibits attached.

Ordinarily such suits should be brought in the name of the state of Texas; but when, as in this case, the apparent legal right is in the name of another, while the state is the real party at interest, there is no rule of law known to the court which would inhibit suit from being brought in the name of such party for the use of the state. No injury is shown to have resulted to appellants from the manner in which the suit was brought. They were allowed the full benefit of all their defenses, the same as if the suit had in the first instance been brought in the name of the state.

Wherefore we conclude that this proposition is not maintainable.

For a third proposition under the first and second assigned errors, appellants assert the following:

"The appellee shows no cause of action against appellants, as it is apparent from the face of the pleadings of the appellee that this suit was filed before the expiration of the time fixed by the lease for its termination, and there is no averment in the pleadings that the lease had been forfeited or had been terminated by the failure or neglect of appellants, after written notice from the governor of the state, to do any act whatever required of them by the terms of said lease; nor is there any sufficient allegation of any kind showing how or in what manner the conditions of the contract have been violated or how a forfeiture of the lease has occurred; nor is there any averment of the happening of any event specified in the lease as a ground of forfeiture, upon which the appellee can have his cause of action; nor is there any allegation of any declaration of such forfeiture by the governor."

And for a fourth proposition under the same assigned errors they present the following:

"The allegations in the pleadings of appellee, to the effect that on or about April 1, 1877, the appellants, in writing, for a sufficient consideration, consented to surrender the possession of the convicts and the penitentiary to the state, are not sufficient averments and are no averments whatever of any breach of the conditions of the contract or a waiver of such breach."

By the terms of the lease, as well as the act of 1871, under and by virtue of which it was executed, it was to run for fifteen years unless sooner declared forfeited by the governor as therein provided.

The act of 1876 provided: "That the governor be and he is authorized and required at such time and in such manner as he may deem necessary or expedient to take and resume, in behalf of the state, the possession, control and management of the penitentiary at Huntsville, and all the property and convicts belonging thereto, whether within or without the walls of said penitentiary, and upon such resumption, the lease heretofore made to A. J. Ward, E. C. Dewey and Nathan Patton, and all the authorities and powers conferred thereby shall cease and determine, and said lessees shall, upon demand, turn over, surrender and deliver to such person or persons as may be designated by the governor, the said penitentiary, its property and convicts." Many other provisions are contained in the act, prescribing in detail for the resumption, and for an adjustment and settlement with the lessees. The act was approved August

19, 1876, but the governor did not resume until April 2, 1877. In the mean time the following correspondence was had between the lessees and governor:

" AUSTIN, TEXAS, February 2, 1877.

" *To His Excellency R. B. Hubbard, Governor of Texas:*

" SIR — Understanding that you believe it to be your duty to resume the possession and control of the state penitentiary and convicts belonging thereto, now leased to us, we beg to submit the following:

" 1. We claim that the lease to us is a contract, binding upon the state of Texas, and one the conditions of which we have not violated, and that it cannot be terminated except in the manner provided by law, and we will resist by all legal measures in our power any effort on your part, as governor, to take, without our consent, immediate possession of said penitentiary, etc. Of our position and purposes in this matter we have already advised you through our counsel, Judge A. S. Walker and Major C. S. West.

" 2. As the law gives you the discretion to resume at such time and in such manner as you may deem necessary or expedient, we respectfully suggest as proper for your consideration that an immediate resumption would be disastrous to our own interests, and, as we believe, against the best interests of the state. We have at the penitentiary a large quantity of material in process of manufacture, and much other property, which would be rendered comparatively valueless to us by a sudden resumption, to say nothing of the loss and embarrassment to ourselves and others which would flow from an unexpected interruption of labor and other contracts into which we have entered.

" In stating our willingness to surrender to the state, as we have several times heretofore done, we never intended to commit ourselves to a surrender without a reasonable time in which to make arrangements preparatory thereto. If you will, in view of all the circumstances, postpone resumption until the 1st day of April, next (1877), we will, in consideration of such postponement, turn over and surrender to you, or such agents as you may designate, at that time, said penitentiary and all its property and convicts, making no resistance or objection, legally or otherwise, to your obtaining quiet, peaceable and unobstructed possession thereof.

" Upon your assent to this proposition, to be expressed by letter, in answer hereto, this shall be deemed and taken as a contract absolute and binding on our part to the effect that we will, on the day named, turn over to you, or such person as you may designate, said

penitentiary, its property and convicts, peaceably, quietly and without hindrance on our part; hereby conceding in that case your legal right in the premises, estopping ourselves from questioning the same and waiving all proceedings and remedies, legal or equitable, which we might otherwise resort to, reserving only the rights and remedies secured to us by law for the adjustment of matters incident to resumption, and the settlement of claims by suit or otherwise between ourselves and the state. Respectfully yours,

(Signed) "A. J. WARD,
(Signed) "E. C. DEWEY,
(Signed) "NATHAN PATTON.
"By WARD & DEWEY."

To which the governor replied as follows:

"AUSTIN, TEXAS, February 2, 1877.

"To Messrs. A. J. Ward, E. C. Dewey and Nathan Patton, Lessees, State Penitentiary:

"GENTLEMEN — I acknowledge receipt of your communication of to-day, in which you propose to surrender to me, or to such persons as I may designate, on the 1st day of April, 1877, the state penitentiary at Huntsville, its property and convicts, peaceably, quietly and without hindrance or question of my legal right to take possession of the same, if I will delay the resumption thereof until the day mentioned. Whilst I contemplated immediate resumption, and believe that I have the legal right to resume at any time, yet as the law leaves to my discretion the time and manner of resuming, I will, in view of all the circumstances, and especially in consideration of the promises and obligations stated in your letter, assent to your proposition. I shall, therefore, on April 1, 1877, for and in behalf of the state of Texas, take possession and control of the state penitentiary, your lease ending on that day, and now hold you bound by contract to surrender to me on that day, peaceably, quietly, and without obstruction or hindrance, said penitentiary, its property, convicts, etc.

"Of course, I am not to be understood as waiving or surrendering my authority or right to resume at any time, if you fail to feed, clothe, treat and guard the convicts under your charge as required by law; and the assent I have given to your proposition is based upon the expectation that you are to take care of the property of the state and discharge your duty to the convicts, just as if I had not assented to the postponement mentioned.

"I am, very respectfully, etc.,

(Signed) "R. B. HUBBARD, Governor.

Ward, Dewey & Co.'s indorsement on copy retained of foregoing letter in executive office:

"We acknowledge the receipt of the original, of which the within is a copy, this February 3, 1877.

(Signed)                            "A. J. WARD,
(Signed)                            "E. C. DEWEY,
(Signed)                            "NATHAN PATTON.
                                    "By WARD & DEWEY."

It was alleged in the petition that the lease "was according to its terms as well as under the authority of law, and by the written agreement and assent of said lessees, determined on or about the 1st day of April, A. D. 1877, and the possession of said penitentiary and its convicts surrendered to said state. The legal right on the part of said state to resume possession and control of said penitentiary at that time being in writing for a sufficient consideration therein stated, conceded and admitted by said lessees. Said lessees also in writing expressly agreed to estop themselves from questioning the same, and waived all proceedings and remedies, legal or equitable, which they might otherwise resort to, and reserved only the rights and remedies accrued to them by law for the adjustment of all matters incident to resumption, and the settlement of all claims by suit or otherwise between themselves and said state."

All exceptions, general and special, to the petition were waived and abandoned by appellants. In the absence of exceptions the allegations contained in the petition were most certainly sufficient to admit evidence showing or tending to show that the lease had been terminated by and with the consent of appellants.

And the evidence introduced, that is, the correspondence between appellants and the governor, as shown above, clearly and fully supported the allegations to the effect that the lease was terminated by and with the consent of appellants.

It seems that the governor was of the opinion that he had the right to resume possession and control of the penitentiary at any time he thought proper; while appellants seem to have been of the opinion that the lease entered into between them and the governor constituted a contract, the inviolability of which was protected by the constitution of the United States, and that therefore the governor could not resume at his pleasure, without their concurrence or consent.

It does not become necessary for us to determine which of these two opposing opinions was correct, for it clearly appears that the matter was compromised and adjusted by the parties. Appellants,

to enable them to work up material then on hand, and otherwise prepare for resumption, agreed and consented to the termination of the lease on the 1st day of April, 1877, if the governor on his part would agree to postpone resumption until that time, which was accepted and acceded to by the governor, and that became the binding contract between the parties. As the lease was so terminated by the agreement of the parties, they occupy respectively the same attitude with respect to its results as if it had ended by the lapse of time as provided for in the lease, and appellants are estopped from claiming anything beyond what was reserved in and by the terms of the contract.

In our opinion the allegations in the petition showed an accrued cause of action against appellants at the time this suit was instituted.

When appellee offered in evidence the bond upon which the suit was in part based, appellants objected on the grounds: 1st, because the bond was payable to another person than the appellee. 2d, because the act which provided for the execution of the bond required that it should be made payable to the state of Texas, and not to the governor of the state. 3d, because the appellee shows no title to the bond or any right to maintain a suit thereon. These objections were overruled, and the bond read as evidence to the jury; that ruling is claimed to be erroneous.

In the well considered case of Johnson v. Erskine, 9 Tex., 1, it was in effect held that a statutory bond must be in substantial compliance with the statute. But to render such a bond void for want of conformity to the statute, it must be made so by express enactment, or else be intended as a fraud on the obligors, by color of law, by an evasion of the statute, or be more onerous upon the obligors than the statute requires.

It is sufficient, for the purpose of this appeal, that under the rule the bond was not void. Besides, the bond and lease formed the basis of the suit, and by the express stipulations of the bond the lease was made part of it. These papers, i. e., the bond and lease, constituted the basis of the action, were attached to and made part of the petition, and were both admissible in evidence as showing the entire contract between the parties.

The recitals in the bond and lease fully made known the character of the transaction, showed that the governor throughout was acting in his official capacity for the state, and, as has been before remarked, the suit as instituted is in effect a suit by the state. It clearly appears from the recitals in the bond and lease, and acts of

the legislature under and by virtue of which they were executed, that the state and not the governor is the real party at interest.

Our conclusion is that the court did not err in admitting the evidence.

It is claimed that the court erred in admitting the inventory and appraisement made by Hardeman and Gibbs to be read in evidence over the objections of appellants. When that inventory was offered in evidence the appellants urged nine several objections to its admissibility. These it is not necessary here to note; generally they are extremely technical and without any foundation in law or fact. The only specific objection urged that in our opinion is entitled to consideration is this: the original inventory and appraisement was deposited in the office of the secretary of state, and it was a copy certified under his hand and official seal that was introduced in evidence. The point made by appellants is, that the original is not an archive in the office of the secretary of state, and hence a certified copy from that office was not admissible.

The statute provides that "all the books, papers, records, rolls, documents, returns, reports, lists and all other papers that have been, are now, or that may hereafter be required by law to be kept, filed or deposited in any of the offices of the executive departments of this state, shall constitute a part of the archives of the offices in which the same are so kept, filed or deposited." R. S., art. 65.

It is also provided, with reference to the duty of the secretary of state, that "he shall keep a fair register of all the official acts of the governor, and when required shall lay the same and all minutes and other papers in relation thereto before the legislature, or either branch thereof." R. S., art. 2720.

In resuming the possession and control of the penitentiary, the governor was acting in his official capacity, that is, the whole proceeding upon his part was an official act; the inventory and appraisement was made in pursuance of law, and as part of the act of resumption. The office of the secretary of state is the legal depository of the governor when acting in his official capacity. Not only is the secretary of state required to keep a fair register of the official acts of the governor, but he is expected to be able to lay before the legislature, not only the registry of such acts, but also "all minutes and other papers in relation thereto." To enable the secretary of state to perform that duty, he would of course have to be considered the legal custodian of such "minutes and other papers."

In our opinion the inventory and appraisement was an archive in

the office of secretary of state, and that the certified copy under his hand and seal was properly admitted in evidence.

There are several other propositions presented by appellants, all of them dependent upon the idea that as the governor had concluded to resume possession and control of the penitentiary and convicts, before they agreed to the resumption, that therefore it must be considered as if the lease had been terminated by the state without their consent. As has been heretofore seen, whatever rights appellants might have had to a continuance of the lease, they waived and abandoned by their contract with the governor. The resumption as well as the termination of the lease was by the consent and concurrence of all the parties at interest. And the fact that the governor might have concluded to resume, whether appellants would or not consent to it, did not in any manner affect the subsequent agreement made by the parties, or the legal consequences or results flowing therefrom.

According to the view we have taken of the main questions presented in the case, that is, as to the effect of the agreement of the parties with respect to resumption by the state, it becomes unnecessary for us to consider in detail the remaining questions presented by the appellants. These questions all hinge upon the one idea that the resumption upon the part of the state was by force, or at least without the consent and concurrence of the appellants.

Considered as a whole the charge of the court is quite as favorable for appellants as the law authorized, and there was no error in the court refusing the charges asked by them.

Upon the main question as to the state of the accounts between the parties, the evidence was conflicting, and the verdict fully sustained by the evidence.

Our conclusion is that the judgment ought to be affirmed.

AFFIRMED.

[Opinion adopted December 5, 1884.]

Associate Justice WEST not sitting.