## AMERICAN SURETY CO. OF NEW YORK v. TARBUTTON. (No. 2677.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 28, 1923. Rehearing Denied March 8, 1923.)

1. **Depositaries** &#x25C7;=7—Recital in bond that bank chosen depository for "scholastic year" held not part of conditional bond limiting term of appointment.

The recital in a statutory bond executed by a bank, as depository of school district funds, that the bank was chosen depository for the "scholastic year beginning September 1, 1920, and ending August 31, 1921," *held* not a part of the condition of the bond operating to limit the terms of appointment of the bank as depository in a way not authorized by Vernon's Sayles' Ann. Civ. St. 1914, art. 2771, as amended by Act March 20, 1917 (Gen. Laws 1917, c. 160 [Vernon's Ann. Civ. St. Supp. 1918, art. 2771]).

2. **Bonds** &#x25C7;=32—If bond contains substantial requirements of statute, it is valid.

Except where the statute declares all bonds void which do not strictly comply with the requirements therein prescribed, a bond need not be in the exact words of the statute, provided it includes substantially all that the statute requires.

3. **Depositaries** &#x25C7;=7—Stipulation in bond, providing for interest on average daily balances on school district funds, held not to render bond more burdensome than statute contemplated.

While Vernon's Sayles' Ann. Civ. St. 1914, art. 2771, as amended by Act March 20, 1917 (Gen. Laws 1917, c. 160 [Vernon's Ann. Civ. St. Supp. 1918, art. 2771]), provides that a bank selected as treasurer of school district funds shall give a bond "to safely keep and faithfully disburse same," and to "pay over to his successor all balances remaining in his hands," a provision in a bond requiring the bank to "faithfully keep said funds and account for them," with interest on the average daily balances, *held* not to render such bond more onerous than authorized by the statute, which declares that the person making the best bid of interest on the average daily balances shall be chosen treasurer; a stipulation that the bank pay interest being no more than a particular undertaking covered by the stipulation that it would "faithfully discharge the treasurer's duties."

4. **Depositaries** &#x25C7;=7—What must and must not be read in statutory bond.

Where a bond is given under the authority of a statute in force when it is executed, it will be presumed, in the absence of a contrary intention, that the intention of the parties was to execute a bond as required by the statute, which becomes a part of the bond as if incorporated in it; whatever is included in the bond and not required by statute must be read out of it and whatever is not expressed in the bond, but required by statute, must be inserted in the bond.

5. **Depositaries** &#x25C7;=7—That statutory bond executed by bank acting as treasurer of school district funds was not in exact words of statute held not to invalidate it.

That the statutory bond executed by a bank as treasurer of school district funds and containing a provision that the bank should account "to the school board of the district and to the state superintendent of public instruction, according to law," did not in terms require it to pay over balances remaining in its hands to its successors, as provided in Vernon's Sayles' Ann. Civ. St. 1914, art. 2771, as amended by Act March 20, 1917 (Gen. Laws 1917, c. 160 [Vernon's Ann. Civ. St. Supp. 1918, art. 2771]), *held* not to affect its validity as a statutory bond, the provision that the bank account to the school board and state superintendent to be treated as surplusage if such accounting is not required by law, and the requirement of the law that it should pay over balances in its hands to its successors to be read into the bond.

&#x25C7;=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Depositaries ⬤⇒14—What evidence held sufficient to show breach of statutory bond executed by bank as treasurer of school district funds.**

Breach of a statutory bond executed by a bank as treasurer of school district funds and by a surety company *held* sufficiently shown by evidence that, after the bank ceased to do business and closed its doors, the board of the trustees of the school district drew on it for the amount on deposit, that the draft was not paid, and that no part of the deposit was ever paid.

**7. Depositaries ⬤⇒13—Undertaking of surety on bond executed by bank as depository of school district funds held to continue until bank's successor qualified and selected.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 2771, as amended by Act March 20, 1917 (Gen. Laws 1917, c. 160 [Vernon's Ann. Civ. St. Supp. 1918, art. 2771]), a bank selected as depository of school district funds *held* required to serve as such until its successor is "duly selected and qualified," and hence, where a bank, after executing the statutory bond, was chosen depository "for the scholastic year beginning September 1, 1920, and ending August 31, 1921," and had been selected as its own successor on August 31, 1921, but not qualifying as such by giving another bond, it was, by the terms of the statute, at the time deposits after August 31, 1921, were made, serving as depository under its appointment on September 1, 1920, and the undertaking of the surety on the bank's bond continued until the bank's successor was selected and qualified, and as such the surety was liable for the amount deposited after August 31, 1921.

**8. Depositaries ⬤⇒13—Surety on bank's bond held not relieved from paying interest after bank closed its doors.**

A surety on a statutory bond executed by a bank under Vernon's Sayles' Ann. Civ. St. 1914, art. 2771, as amended by Act March 20, 1917 (Gen. Laws 1917, c. 160 [Vernon's Ann. Civ. St. Supp. 1918, art. 2771]), as depository of school district funds, who undertook that the bank would pay interest on deposits, such surety *held* not released from paying interest from the time the bank was ordered to close its doors by the Commissioner of Insurance and Banking.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by A. B. Tarbutton, President of the Board of Trustees of the Troup Independent School District, against the American Surety Company of New York and another. Judgment for plaintiff, and defendant named appeals. Affirmed.

The Troup Guaranty State Bank was duly selected as treasurer of the Troup independent school district for the scholastic year beginning September 1, 1920, and ending August 31, 1921, and on August 31, 1920, made a bond (which was duly approved) as such treasurer, with appellant (a corporation) as surety. The bond was for $35,000 and was payable to appellee, then the presi-

dent of the board of trustees of said district, and his successors in office. It was otherwise as follows:

"The condition of the above obligation is such that whereas the above-bounded Guaranty State Bank of Troup, Tex., offered the best bid of interest on average daily balances of school funds, and was on August 31, 1920, chosen by board of trustees as depository of the Troup independent' school district for the scholastic year beginning September 1, 1920, and ending August 31, 1921:

"Now, therefore, if the said Guaranty State Bank of Troup, Tex., shall faithfully discharge its duties and pay the said funds received by it upon draft of the president, drawn upon order, duly entered by the board of trustees, and shall faithfully keep said funds and account for them, together with the interest thereon, at the rate of five per cent. per annum, calculated on average daily balances, to the school board of said district and to the state superintendent of public instruction according to law, then this obligation shall be void, but otherwise it shall remain in full force and effect."

At the end of the scholastic year mentioned in the bond, to wit, August 31, 1921, the school district had $5,489.85 on deposit with said bank as treasurer. On the day last mentioned the bank was reappointed treasurer, but did not then or thereafter make a bond as such. October 21, 1921, the bank was closed by order of the Commissioner of Insurance and Banking, who took charge of same for the purpose of winding up its affairs as provided by law. At that time, to wit, October 21, 1921, the school district had $7,559.15 on deposit with the bank as treasurer. At some time not stated in the record, but after said October 21, 1921, the board of trustees of the district "drew a draft or voucher" on the bank for said $7,559.15, which was not paid. This suit was by said district and appellee as the president of said board of trustees against the bank as the principal and appellant as the surety on the bond referred to, and was to recover said $7,559.15 and interest thereon. The trial was to the court without a jury, and resulted in a judgment in appellee's favor against the bank and appellant jointly for $7,607.05, and against appellant alone for the further sum of $300 as the interest at 5 per cent. per annum on said $7,607.05 from October 20, 1921, to June 29, 1922, the date of said judgment. The appeal is by the surety company alone.

T. N. Jones, of Tyler, and Fiset & Shelley, of Austin, for appellant.

Simpson, Lasseter & Simpson, of Tyler, for appellee.

WILLSON, C. J. (after stating the facts as above). The contentions presented in appellant's brief are: (1) That the obligation sued on was not valid as a statutory bond because it was not conditioned as required

by the statute; and, therefore, that appellant's liability was determinable with reference alone to rules applicable to common law bonds. (2) That it did not appear from the testimony that there had been a breach of the condition of the bond. (3) That appellant was not in any event liable for money deposited with the bank after August 31, 1921, nor for interest which accrued after October 21, 1921, the date when the bank was closed by order of the Commissioner of Insurance and Banking.

[1] The first one of the contentions is predicated upon the view that the condition of the bond was materially different from the condition prescribed by the statute applicable, to wit, article 2771, Vernon's Statutes, as amended by Act March 30, 1917, General Laws, c. 160 (Vernon's Ann. Civ. St. Supp. 1918, art. 2771). The statute referred to required the bank, when it was selected as treasurer of the school district, to give a bond "conditioned for the faithful discharge of the treasurer's duties and the payment of the funds received by him upon the draft of the president of the school board drawn upon order duly entered of the board of trustees. Said bond shall be further conditioned that the treasurer shall safely keep and faithfully disburse all funds coming into his hands as treasurer, and shall faithfully pay over to his successor all balances remaining in his hands."

[2, 3] It will be seen on reference to the statement above that the bond contained a recital that the bank had been chosen depositary for "the scholastic year beginning September 1, 1920, and ending August 31, 1921." Appellant insists that the recital was a part of the condition of the bond and operated to limit "the term of the appointment" in a way not authorized by the statute. But plainly, we think, the recital was not a part of the condition of the bond and is of no importance in determining the contention. The difference between the condition in the bond and the condition prescribed by the statute lies alone in the fact that that in the statute required the treasurer, or depository of such funds "to safely keep and faithfully disburse same," and to "faithfully pay over to his successor all balances remaining in his hands," while that in the bond required the bank to "faithfully keep said funds and account for them," with interest on the average daily balances, "to the school board of said district and to the state superintendent of public instruction according to law."

The rule applicable has been stated as follows:

"Except where the statute, either expressly or impliedly, declares all bonds void which do not strictly comply with the requirements therein prescribed, a bond need not be in the exact words of the statute, and the fact that it slightly varies from the form prescribed will not invalidate it, provided it includes substantially all that the statute requires, that is such obligations as are imposed by the statute, and allows every defense given by law, as where it is more specific than the statute requires, but imposes no additional obligation." 9 C. J. 24; and see 4 R. C. L. 54; Johnson v. Erskine, 9 Tex. 1; Ward v. Hubbard, 62 Tex. 559; King v. Frazer, 2 Willson, Civ. Cas. Ct. App. § 788; Bank v. Parrish (Tex. Civ. App.) 207 S. W. 939; State v. Harper, 99 Tex. 19, 86 S. W. 920.

We think the bond is within the rule stated, unless it should be said that the provision requiring the bank to account for interest on average daily balances rendered it more onerous than was authorized by the statute; and in that event that it would be invalid in that respect only, and would be enforceable in the respects it conformed to the requirement of the statute, within a rule stated in 9 C. J. 25, as follows:

"Where a bond contains the conditions prescribed by the statute, and also contains conditions in excess of those required, if the excess can be separated from the authorized portion without destroying the latter it may be rejected as surplusage and the rest of the bond held valid, in the absence of a statutory provision expressly or by implication making it void, unless the language of the bond precludes a construction giving it validity."

Did the provision in the bond referred to render it more onerous than was authorized by the statute? We think not. The statute declared that "the treasurer of the school fund (quoting) shall be that person or corporation who offers satisfactory bond and the best bid of interest on the average daily balances for the privilege of acting as such treasurer," and that the bond given should be conditioned, among other things specifically mentioned, "for the faithful discharge of the treasurer's duties." One of the duties of the treasurer was to pay interest it agreed to pay on funds intrusted to it, and the stipulation that it should pay interest on the average daily balances was no more than a particular specification, or definition, of an undertaking covered in a general way by the stipulation that it should "faithfully discharge the treasurer's duties."

[4, 5] We do not think the fact that the bond contained a provision that the bank should account "to the school board of the district and to the state superintendent of public instruction according to law," and did not in terms require it to pay over balances remaining in its hands to its successor affected its validity as a statutory bond. The provision that the bank should account to the school board and state superintendent should be treated as surplusage if such accounting was not required by law, and the requirement of the law that it should pay over balances in its hands to its successor should be read into the bond. The rule is "that the law" quoting further from 9 C.

J. 34, "at the time of the execution of the bond is a part of it; if it gives the bond a certain legal effect it is as much a part of the bond as if in terms incorporated therein. Where a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention it will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute and the construction given to the statute by the courts. Such a bond must be given the effect which in reason must have been intended by the statute. Whatever is included in the bond, and is not required by the law, must be read out of it, and whatever is not expressed, and ought to have been incorporated, must be read as if inserted into it."

[6] As we understand the record there is no merit in the contention that it did not appear that there had been a breach by the bank of the condition of the bond. The trial court found that the bank was insolvent on August 31, 1921, and at all times thereafter until it closed its doors on October 21, 1921. The finding is attacked on the ground that it was without support in the testimony. We think it was warranted by testimony in the record, but are not prepared to say that insolvency of the bank constituted a breach of the bond. We think, however, that such a breach was sufficiently shown by testimony that after the bank ceased to do business nad closed its doors October 21, 1921, the board of trustees of the school district drew a "draft or voucher" on it for the $7,-559.15 on deposit with it as treasurer, and that the draft was not paid; and testimony showing that neither the amount of said deposit, nor any part of same, was ever paid to appellee, nor to the First National Bank of Troup, which was the successor of said Guaranty State Bank of Troup as treasurer for the school district. While it does not directly appear that the draft referred to was presented for payment, we think it is a fair inference from the record that it was.

[7] The view urged by appellant that it was only liable for a breach of the bond occurring on or before August 31, 1921, is predicated, as is its contention that it was not liable for sums deposited with the bank after that date, on the recital in the bond that the bank had been chosen depository "for the scholastic year beginning September 1, 1920, and ending August 31, 1921." It is clear enough, we think, that by the terms of the bond and the statute under which it was executed appellant was liable not only for a breach of the bond occurring on or before said August 31, 1921, but for a breach thereafter by the bank of its undertaking to pay over money deposited with it during that time by the school district to the proper person. Whether appellant was liable for sums deposited with the bank after August 31, 1921, is not so clear; but we have concluded, on consideration of the question, that it was. By the terms of the statute, the bank, after it was selected as depository, was required to serve as such until its successor was "duly selected and qualified." Article 2771, Vernon's Statutes, 1918 Supp. The bank, it seems, had been "duly selected" as its own successor after the date specified (August 31, 1921), but it never qualified as such by giving another bond, and by the terms of the statute at the time the deposits in question were made it was serving as depository under its appointment as such made before September 1, 1920. In its legal effect appellant's undertaking as the bank's surety was for the discharge of the duties of the bank as depository for the scholastic year beginning September 1, 1920, and ending August 31, 1921, and until its successor as depository was "duly selected and qualified." State v. McGuire, 46 W. Va. 328, 33 S. E. 313, 76 Am. St. Rep. 822; Ramsey v. People, 197 Ill. 572, 64 N. E. 549, 90 Am. St. Rep. 177; Brown v. Sneed, 77 Tex. 476, 14 S. W. 248; City of Grand Haven v. U. S. Fidelity & Guaranty Co., 128 Mich. 106, 87 N. W. 104, 92 Am. St. Rep. 446; Baker City v. Murphy, 30 Or. 405, 42 Pac. 133, 35 L. R. A. 88; 22 R. C. L. 514. The authorities cited by appellant as supporting its contention to the contrary of the conclusion we have reached are U. S. Fidelity & Guaranty Co. v. City of Pensacola, 68 Fla. 357, 67 South. 87, Ann. Cas. 1916B, 1236, and Surety Co. v. Hamilton County, 186 Ind. 650, 117 N. E. 860. In the City of Pensacola Case the condition of the bond was that the depository should faithfully account for all moneys deposited with it from the date of the bond to November 1, 1913. It was held that the obligation of the surety did not extend to deposits made after the date specified. But from the report of the case it did not appear there, as it did here, that the depository by the terms of the law under which the bond was executed was to continue to serve as such until its successor was selected and had qualified. A like ruling was made in the Hamilton County Case, but in that case, as in the City of Pensacola Case, it does not appear in the report of it that the depository was to continue to serve as such until its successor was selected and qualified. For that reason we do not regard either of the cases as supporting appellant's contention. But for the provision in the statute of this state referred to above, we are inclined to think appellant would not be liable for deposits made by the school district after the time for which the bank was appointed depository. The provision in the statute was as much a part of the bond as it would have been had it been written into it, and appellant was bound by it.

[8] The contention remaining is that appellant was not liable for interest on the deposits after October 21, 1921, when the Commissioner of Insurance and Banking took charge of the bank for the purpose of winding up its affairs as provided by law. The answer to the contention lies in the terms of the bond. Appellant undertook that the bank would pay interest on. the deposits, and bound itself to do so if the bank should fail to comply with its undertaking. The bank failed to pay the interest, and we see no reason why, when it failed, appellant should be relieved from the performance of its undertaking to pay it in that event. The purpose of the bond and law requiring it was to provide relief to the school district for such defaults on the part of the depository.

The judgment is affirmed.