# SUPREME COURT OF TEXAS.

## AUSTIN TERM, 1852.

JOHNSON AND OTHERS V. ERSKINE, CHIEF JUSTICE, USE OF HANGER.

The general rule is, that when directed to be made in a particular mode, that mode must be substantially pursued in order to make a valid *statutory* bond; but to render a bond *void* for want of conformity to the statute it must be made so by express enactment, or be intended as a fraud on the obligors, by color of law, by an evasion of the statute, or be more onerous than is required by the statute.

The objects of the two statutory bonds required of ferrymen by the 14th section of the act of 1836, (Hart. Dig., art. 1385,) and the 5th section of the act of 1840, (Hart. Dig., art. 1391,) were obviously distinct.

Where the statute required ferrymen to give a bond to do certain things specifically, and the bond taken was conditioned "that they shall well and truly perform and discharge all the duties required of them as ferrymen," it was held that the bond, being more onerous than required by the statute, was void and would not sustain an action as a common-law bond.

A literal conformity to the statute in a statutory bond in general would not be required, but where its conditions are specially and particularly set out the bond should substantially embrace each of those conditions.

REHEARING.

Where the statute specially sets forth certain things or conditions to be done and performed, and the bond sets out those conditions substantially in the terms of [2] the statute, but proceeds to set out other conditions, the bond will be good under the statute as to the conditions properly contained in it, the other conditions being considered surplusage; but where none of the conditions set out in the statute are contained in the bond, and the only condition set out is collectively "to perform and discharge all the duties," &c., the bond will not be valid under the statute.

If a bond intended to be taken by authority of a statute cannot be sustained as a statutory bond it will not be valid as a common-law voluntary bond unless it will stand as such without the aid of the statute. There is a class of bonds that may well be sustained, from their form and structure, without the aid of any statute: injunction bonds, bail bonds, replevy bonds, forthcoming bonds, appeal and writ of error bonds, and all such as are made payable to the beneficiary or interested party, unless taken under coercion and oppression, or by fraudulent imposition; they would be valid at common law without resorting to the statute to give them effect.

The right to keep a ferry and charge ferriage is a common-law right, but by our statutes this natural right has been abridged, and it has been made a franchise to be exercised on giving bond and obtaining a license for its enjoyment.

Where a party had a right at common law to do a certain thing, as to keep a ferry, and a statute exacts the giving of a bond as a condition precedent, the giving of the bond cannot be called a voluntary act; and if the bond be not good as a statutory bond, it will not be binding as a voluntary bond at common law.

It seems to be well settled that if a bond be not good as a statutory bond, but be good as a common-law bond, there can be but one recovery on it.

Sound policy forbids the court to sustain a bond, intended to be taken by authority of a statute, as a common-law bond except in cases which are very clear.

A ferryman who has not given a valid bond in conformity to the statute is liable as a common carrier.

Appeal from Guadaloupe. This suit was instituted in the District Court for the county of Guadaloupe to recover damages from the appellants for the loss of mules and other property whilst attempting to cross the river at the ferry kept by the appellants. The suit was brought on the bond given by the appellants on their obtaining a license to keep a ferry. It was taken under the 14th section of the act of the congress of the republic of December 20th, 1836, article 1385 of Hartley's Digest. That section reads as follows: "That at all times "the County Courts throughout this Republic shall have power to establish "ferries as are hereinafter directed; that, before any person shall establish a "public ferry in the [3] Republic, he shall apply to the County Court of the

1·

Johnson v. Erskine.

"county in which such ferry is intended to be established, and the court, for "good cause being shown by the party applying, may grant a license to estab-"lish a ferry, and shall affix the rates of ferriage for crossing all persons, horses, "cattle, carriages, &c., that shall pass the same; and shall moreover require "from the person or persons applying for license to give bond with good and "sufficient security in the sum of one thousand dollars, payable to the judge of "the County Court of the county in which the application is made, and his "successors in office, conditioned that the person or persons to whom said "license may be granted shall provide and constantly keep good and sufficient "boats or other craft; also, the banks on either side of the water-course in good "repair; and that said ferry shall be well attended for travelers or other per-"sons to carry or pass with horses, carriages, or effects over such river or "water-course."

The condition of the bond sued on was that they "shall well and truly per-"form and discharge all the duties required of them as ferrymen."

There was a verdict and judgment for the plaintiff. Motion in arrest of judgment on the ground that the condition of the bond did not conform to the statute. Overruled.

*Webb & Oldham*, for appellants. The judgment should have been arrested. This purports to be a statutory bond, and it does not conform to the statute.

The condition of the bond is not in accordance with the statute, and therefore is not good as a statutory bond, and the facts set forth in the petition did not authorize the plaintiff to maintain this suit for the use of Hanger. (Hibbits v. Canada, 10 Yerg. R., 463; M'Intosh v. Laugtree, 6 Yerg. R., 317; Sumner & Foster v. Henry, 4 Yerg. R., 155; Janes *et al.* v. Reynolds, Adm'r, 2 Tex. R., 250.)

Regarded as a common-law obligation the facts alleged do not constitute a breach of the condition for want of privity between the obligors and Hanger.

[4] *Paschal* and *Gordon*, for appellee. The motion in arrest of judgment in this case is a general exception to the judgment, and under our system of pleading and practice should not be allowed to seek inquiry into the case. The object of the motion, however, is to attack the validity of the bond of defendants or appellants upon which this suit was brought. Although the bond is not in the precise words of the statute, yet it imposes upon them all the obligations and responsibilities of the statute. They bind themselves to "discharge all the duties required of them as ferrymen," and the statute requires certain duties to be performed by ferrymen; hence the bond, although not literally is substantially in compliance with the statute.

"An official bond required by statute, but which is not in conformity with "the statutory provisions, is good so far as it does conform, unless the statute "expressly provides that bonds not made in conformity therewith shall be "void." (1 Kelly, Ga. R., 581–2.)

"A bond taken under the statute is not void for not conforming precisely to "the directions of the statute, unless it be made so by express enactment, or "the variance was intended to evade the statute or to operate as a fraud upon "the obligors." (2 Bail. R., 376; 2 N. & McC. R., 425; 2 McC. R., 107; 6 Binn. R., 298.)

"A bond is not void merely because it does not in all respects conform to "the statute under which it is taken. It is absolutely void only when the "statute delares it void." (Van Deusen v. Hayward, 17 Wend. R., 67; Ring v. Gibbs, 26 Wend. R., 502.)

"A variance between a statutory bond and the requisitions of law is fatal "only where the condition would impose on the obligor a greater burden than "the law allows." (The Commonwealth v. Lamb, 1 Watts and Serg. R., 261.)

"The obligor in a statute bond can in no case be permitted to take advan-"tage of the omissions of conditions, where the omission is beneficial to him-"self." (The Justices v. Wynn, Dudley, Ga. R., 22.)

Johnson v. Erskine.

" Where there has been a substantial compliance with the law, the want of "rigid conformity with the mere letter of the statute requiring a bond to be "taken is not a fatal objection to the bond." (Central Bank v. Kendrick, Dudley, Ga. R., 66.)

" The rule in regard to bonds or other deeds void in part by common law or "by statute is, that they are void as to such conditions, covenants, or grants "as are illegal, and good as to all others which are legal and unexceptionable." (Whitted c. The Governor, 6 Port. R., 335.)

If this bond is not a statutory bond, it is good at common law, and there being no distinction in our courts between law and equity it matters not whether the bond be sued upon as a statutory or common-law bond, or a mere voluntary obligation; the parties are liable under it; provided they have been allowed all of their equitable defenses; therefore the judgment must be good.

LIPSCOMB, J. It is manifest that the conditions of the bond sued on are not in conformity with those expressly required by the statute under which the bond was taken; but is such non-conformity sufficient to invalidate the bond? In the case of Janes et al. v. Reynolds, administrator, (2 Tex. R., 255,) this court acknowledged that the general rule on the subject of statutory bonds is, " that when directed to be made in a particular mode, that mode must be pursued;" but we say that "this rule is subject to modifications, and it is laid "down that to render a bond void for want of conformity to a statute it must "be made so by express enactment, or must be intended as a fraud on the "obligors, by color of law, by an evasion of the statute." (Treasurers v. Bates, 2 Bail. R., 376; United States v. Tingey, 5 Pet. R., 129; United States v. Bradley, 10 Id., 343; United States v. Lynn, 15 Id., 290; Speake et al. v. United States, 9 Cr. R., 28.) There is no provision in the statute making the bond void for non-conformity to the mode prescribed; and if it is void as a statutory bond, it is so on the ground of some other vice in it.

[6] It is laid down in the decision of this court in the case we have just cited, if not in express terms by implication at least, that if the covenants contained in the bond are more onerous than those imposed by the statute, such departure from the statute would invalidate the bond. The condition of the bond in this case is "that they shall well and truly perform and discharge all the duties required of them as ferrymen," language sufficiently comprehensive to embrace not only all the conditions expressly enumerated and required by the statute directing the bond to be taken, but also all other duties required by law from the licensed ferryman. And if there are other duties required by law it would result that the bond is more onerous to the obligors than those imposed by the law under which it was taken. It will be found that the last sentence of the 15th section of the same act gives to any person who may be detained at a public ferry, by the neglect of the ferryman performing his duty, the right to recover by a warrant from a justice of the peace ten dollars for such delay. The 16th section imposes a penalty for exacting more toll than is allowed by law. These are duties not imposed by the conditions of the statutory bond, but would be embraced in the conditions of the bond sued on.

Again, the 5th section of the act to amend an act organizing justices' courts, and defining the powers and jurisdiction of the same, January 19th, 1840, (Dig., art. 1391,) enacts "That the County Courts throughout the Republic shall "require the owner or owners of the ferries established in their respective "counties to give bond with good and sufficient security in the sum of one "thousand dollars, payable to the judge of the County Court of the county "where such ferry is established, and to his successors in office; conditioned, "that the person or persons giving such bond shall keep the banks on either "side of the water-course in good repair, and that the slope or amount of rise "from the water's edge of such bank shall not exceed two feet for each rod. "And if any ferryman or owner of any ferry shall not comply with [7] the

3

Johnson v. Erskine.

"conditions above mentioned he shall forfeit and pay to the county treasurer "of the county ten dollars a day for each day he shall neglect to keep the said "banks in repair, said money to be applied to the use of the county."

The conditions of the bond sued on would render the obligors bound for the performance of the duty here imposed on the ferryman, whether any damage had been sustained or not, if the duty had not been performed. The object of the two statutory bonds required to be given by ferrymen or owners of ferries was obviously distinct; the first was intended as a security for those who should sustain damage from the breach of its conditions; and if no damages had been sustained there could be no ground for an action. The second was to secure the penalty for the non-performance of a duty imposed, without regard to the question whether damages had been sustained or not; and yet the bond sued on is so framed that it could with as much propriety, and perhaps more, claim to be taken under the last as under the first. A literal conformity to the statute in a statutory bond in general would not be required; but where its conditions are specially and particularly set out, as they are in the statute under which the bond sued on was made, the bond should substantially embrace each of those conditions. The conditions expressed in the statute have been so entirely disregarded in the bond sued on that we believe it could not be the ground of an action under the statute, and that the judgment must be reversed and cause dismissed.

It may be proper to remark that the law under which this suit was brought and the provisions of other statutes cited have all been repealed or suspended by the act of 23d of January, 1850. (Dig., art. 1413.)

REHEARING.

*I. A. & G. W. Paschal*, for appellee. This court, in the opinion delivered at the last term, we respectfully submit, [S] erred in holding the bond to be void and directing the suit to be dismissed. Whether viewed as a common-law or statutory bond the plaintiff had the right to recover. (Grimes v. Butler, 1 Bibb R., 192; Bartlett & Co. v. The Governor, for the use of Prather, 2 Bibb R., 586 and 641; Colley v. Morgan, 5 Ga. R., 178; Justices Inferior Court v. Ennis, 5 Ga. R., 569; Governor Crawford, for the use of Ward, v. Stephens *et al.*, 1 Kelly R., 574; and the same case, 3 Kelly R., 499; Hall v. Cushing, 9 Pick. R., 395; Morse v. Hudson, 5 Mass. R., 314; Commonwealth v. Hatch, 5 Mass. R., 191; United States v. Bradley, 10 Pet. R., 343; Miner v. Mechanics' Bank, 1 Pet. R., 69; United States v. Tingey, 5 Pet. R., 115; Acker v. Burrell, 21 Wend. R., 605; State New York v. City of Buffalo, 2 Hill, 434; Allegany Supervisors v. Van Campen, 3 Wend. R., 48; Triplett v. Gray, 7 Yerg. R., 13; Spear v. Ditts, 8 Verm. R., 419; United States v. Morris, 2 Brock. R., 96; Stevens v. Treasurers, 2 McC. R., 107; Branch v. Commonwealth, 2 Call. R., 570; Johnson v. Gwathmey, 2 Bibb. R., 186; Treasurer v. Bates, 2 Bail. R., 362; Janes *et al.* v. Reynolds, 2 Tex. R., 250.) These authorities have been cited to the single point decided by the court. The cases cited in Janes v. Reynolds, (2 Tex. R., 250,) completely exhaust the subject and show the true rule and its reasons.

LIPSCOMB, J. After the opinion of the court in this case had been delivered at the last term, on the petition of the appellee's counsel a rehearing was granted, and an argument has been heard at this term. The counsel for the appellee has endeavored with much ability to establish two positions: 1st, that the bond sued on is a good statutory bond; 2d, that if not good as a statutory bond, yet it is a good and valid bond at common law, sufficient to sustain the judgment of court below.

We have endeavored to bestow due consideration on his arguments and the very respectable authorities referred to by him. On the first position assumed we will, in addition to [9] what is said in our opinion in support of the con-

Johnson v. Erskine.

clusion that the bond is not a good bond under the statute, further say that, although it is admitted that where the statute specially sets forth certain things or conditions to be done and performed, and the bond sets out those conditions substantially in the terms of the statute, but proceeds to set out other conditions to be performed, that the bond will be good under the statute because it has specified all that the statute required, and as to the others not required, they may be considered as surplusage, and the bond inoperative as to them; yet that it is not so where none of the conditions set out in the statute are contained in the bond, and the only condition set out is collectively "to perform and "discharge all the duties required of them as ferrymen," and other duties being required by law, for which another bond is required to be given.  We are not furnished with any certain data to enable us to say what duties were intended to be secured to be performed by the bond on which this suit has been brought, but it is insisted that if the bond sued on is not a good bond under the statute it is valid as a voluntary bond at common law.  And it is admitted that this position seems to be supported by the authority of some adjudicated cases of great respectability.  The case most relied on by the counsel for the appellee and pressed with great force is Stephens *et al. v.* Crawford, Governor, 3 Kelly. 499.  Stephens had been elected sheriff, and had within the time required by law after his election given bond, and was in office under his election, and after the expiration of the time allowed by law to the sheriff elect to give bond, on some suggestion of the insufficiency of the bond he had given he voluntarily gave another bond.  The court ruled that this last bond was not good under the statute, but that it was valid and binding upon him and his securities as a voluntary bond at common law.  And it was further decided in the same case that as a common-law bond it could invoke the aid of the statute, the provisions of which it had so far disregarded as to be held not a statutory bond, to give it force and effect.

[10] To this last proposition, notwithstanding the great and sincere respect we entertain for the court so ruling, we are unable to yield our assent.  We believe that if a bond, intended to be taken by the authority of a statute, cannot be sustained as a statutory bond, it cannot be valid as a common-law voluntary bond unless it will stand as such without the aid of the statute by which it has been repudiated.  There is a class of bonds that may well be sustained, from their form and structure, without the aid of any statute : injunction bonds, bail bonds, replevy bonds, forthcoming bonds, appeal and writ of error bonds, and all such as are made payable to the beneficiary or the interested party, unless taken under coercion and oppression, or by fraudulent imposition on the party ; they would be valid at common law without resorting to the statute to give them effect as such.

Again, we are not prepared to say that the bond sued upon in this case is a voluntary bond, because, independently of all statutory enactments, the appellants were under no moral obligation to give a bond before they could exercise the privilege of keeping a ferry boat upon their own lands and demanding a compensation from those who received their services.  But by our statutes this natural right has been abridged, and it has been made a franchise to be exercised on giving bond and obtaining a license for its enjoyment.  The statute should therefore require a more strict observance.  Now, it will be seen that in most of the cases cited by the appellee's counsel the suit was on an official bond, as was the case in 3 Kelly, and it cannot be contended that to require an official bond from an officer on entering upon the discharge of official duties is any abridgement or restraint upon his rights; yet the eminent judge who delivered the opinion in the case referred to, to support the conclusion that the second bond was a voluntary bond, seems to place much stress on the fact that Stephens was already in the office of sheriff when that second bond was given by him.  Had the appellants been already in the enjoyment of the franchise under a [11] license when they gave the bond it would have been analogous

5

Johnson v. Erskine.

in many respects to the case of the sheriff Stephens, but they were not, and were required to give the bond before they could exercise a right that unquestionably belonged to them if there had been no statute in relation to ferries.

In the case of the Commissioners of the Poor for Lawrence District *v.* Gains *et al.*, 1 vol. South Carolina Rep., 459, which was a suit on a bastardy bond, Judge Nott, who gave the opinion of the court, says that the bond is not valid as a statutory bond; that where an act of the assembly requires a thing to be done in a particular way, that way and that alone must be pursued; that every feature of the act is so distorted by this bond that one would hardly suppose it had any relation to it; and he proceeds, "I do not think it a good bond at "common law; if it had been voluntarily entered into, for the purpose of sup-"porting this child, I should consider it a duty which the obligor was under a "natural and moral obligation to perform, and therefore a debt which he was "legally bound to pay; but it appears on the face of it that he was taken by "virtue of a warrant from a magistrate, and compelled, under color of legal "authority, to enter into a bond for purposes which he was neither naturally "nor morally bound to perform." Independently of the statute as before said, the appellants were neither legally nor morally bound to give the bond as a prerequisite to the exercise of the right to keep a ferry, and as they were required to give the bond before exercising it, the giving it cannot well be called a voluntary act.

Unless we felt very clear that the bond was valid as a voluntary common-law bond, sound policy would forbid our sustaining it as such. Any latitude allowed to officers whose duty it is to take bonds, in departing from the terms required by the statute in the structure and framing the bond, will be an encouragement to a further disregard and inattention to its requisitions, and it must be productive of an evasion of the statute altogether, because it seems to be well settled that if [**12**] a bond is sued upon as a common-law bond, there can be but one recovery on it, (see case 3 Kelly, before cited;) hence a bond might so far depart from the statute as not to be sustainable as a statutory bond, and this through design; and when sued upon as a common-law bond—say that it was a sheriff's bond—the sheriff might invoke a recovery against him for a few dollars, which would prevent any other suit being sustained on it—a bond that the statute contemplated should be a security against delinquencies to the amount of twenty or even one hundred thousand dollars would be discharged by a judgment on it, as a common-law bond, for a mere nominal amount.

Believing that the bond sued on was neither void under the statute nor at common law, we adhere to the opinion that the judgment must be reversed and the cause dismissed. The only legal remedy that the appellee had was a suit at common law against the appellants as common carriers, if he had suffered by the negligence of themselves, their servant, or agents.

Reversed and dismissed.

WHEELER, J., gave no opinion in this case.