BOARD OF EDUCATION OF RAPID CITY v. SWEENEY *et al.*

An official bond in which the name of the officer whose bond it purports to
  be appears in the body thereof as principal, but which is not executed
  by him, is *prima facie* an invalid instrument, and not binding upon the
  sureties thereto.

(Syllabus by the court. Argued Nov. 13, 1890. Opinion filed March 19, 1891.)

Appeal from district court, Pennington county. Hon.
CHARLES M. THOMAS, Judge.

Action upon the official bond of Bentley B. Bene-
dict, probate judge of Pennington county. Verdict and judg
ment for plaintiff. Defendant appeals. Reversed.

The facts are stated in the opinion.

*William Gardner, Schrader & Lewis,* and *W. H. Mitchell,* for
appellants.

The instrument in suit is not a bond and will not support
an action because not executed by the principal. Bernard v.
Viel, 21 Wend, 88; Russell v. Annable, 109 Mass. 72; Pepper
v. State, 22 Ind. 399; Johnson v. Kimball, 39 Mich. 187; Hall
v. Parker, 37 Mich. 590; Bunn v. Jetmore, 70 Mo. 228; Ferry v.
Burchard, 21 Conn. 602; Story on Contracts, 11, 360; Sacra-
mento v. Dunlap, 14 Cal. 421; People v. Hartley, 21 Cal. 585;
Bean v. Parker, 17 Mass. 592; Wood v. Washburn, 19 Mass.
22; Arter v. People, 34 Ill. 228.

*John W. Nowlin,* for respondent.

The liability of the principal and sureties upon the bond
in suit was complete when it was executed by the sureties
alone. State v. Bowman, 10 O. 445; Gardner v. Wooder, 1 O.
170; Miller v. Montgomery Co. Id. 271; Trustees v. Schiech, 8
N. E. 189; Bolman v. Peacewalker, 36 N. W. 134; Alleghany v.
Von Campen, 3 Wend. 49; United States v. Lum, 15 Pet. 290.
The theory upon which the cases cited by appellant were de-
cided was that the bonds in question were joint bonds. The
bond in suit is not a joint bond but is joint and several.

CORSON, P. J. This was an action on the official bond of
Bentley B. Benedict, probate judge of Pennington county. A

trial was had before a jury, and a verdict and judgment rendered for plaintiff. A motion for a new trial was made and overruled, and the defendants appeal from the judgment and order overruling the motion for a new trial. The bond upon which the action was based is as follows:

"OFFICIAL BOND AND OATH FOR COUNTY OFFICERS.

"Know all men by these presents that we, Bentley B. Benedict, as principal, and Francis J. McMahon, Joseph B. Gossage, Abram Boland, Thomas Sweeney, Joseph B. Gossage, P. B. McCarthy, Charles Roberts, Louis Volin, and Herbert S. Hall, as sureties, of the County of Pennington and Territory of Dakota, are held and firmly bound unto the County of Pennington, in the Territory of Dakota, in the penal sum of five thousand dollars, lawful money of the United States, to be paid to the said County of Pennington, for which payment well and truly to be made we bind ourselves, our executors and administrators, jointly and severally, by these presents. Sealed with our seals and dated this ninth day of January, A. D. 1883. The condition of the above obligation is such that whereas, the said Bentley B. Benedict has been elected to the office of probate judge within and for the county of Pennington, Dakota territory: Now, therefore, if the said Bently B. Benedict shall faithfully and impartially discharge the duties of his said office of probate judge, and render a true account of all moneys, verdicts, accounts, and property of any kind that shall come into his hands as such officer, and pay over and deliver the same according to law, then the above obligation to be void; otherwise to remain in full force and virtue.

> "FRANCIS J. MCMAHON, [Seal.]
> "JOSEPH B. GOSSAGE, [Seal.]
> "ABE BOLAND, [Seal.]
> "THOMAS SWEENEY,
> "CHARLES ROBETS, [Seal.]
> "P. B. MCCARTHY,
> "LOUIS VOLIN,
> "HERBERT S. HALL,

"CHAS. ROBERTS.
"Signed in presence of J. F. SCHRADER.

Territory of Dakota, County of Pennington—ss.:    I, Bently B. Benedict, having been elected to the office of probate judge within and for the County of Pennington, do solemnly swear that I will support the constitution of the United States, and the act organizing this territory, and that I will faithfully and impartially, to the best of my knowledge and ability, perform all the duties of my said office of probate judge, as provided by the condition of my official bond written within.

BENTLY B. BENEDICT.

"Subscribed and sworn to before me this 9th day of January, A. D. 1883.

J. S. GANTZ, County Clerk,

By A. P. STERLING, Deputy."

The bond was filed January 9, 1883, and approved February 15, 1883.

The appellants rely for a reversal of the judgment upon four propositions, which are stated in their brief as follows: (1)  This is no bond because not executed by principal. (2)  It was not given to cover the duties of trustee of the town site.  (3)  If given to cover duties of trustee of the town site, the duties of such trustee were materially changed, and his responsibility increased after the giving of the bond.  (4)  The school board is not a party to the contract, and cannot sue upon the bond.

It will be observed that while the name of Bently B. Benedict is inserted in the body of the bond as principal, it was not executed by him.   The first proposition of counsel for appellants presents the important question as to the liability of sureties upon an official bond when the name of the officer appears upon the face of the bond as principal, but the bond is not signed by him.   The authorities upon this question are irreconcilably conflicting, and it therefore becomes the duty of the court to follow that line of decisions best calculated to subserve the ends of justice, and carry out the intention of the law makers in providing for such official bonds.   Section 1371, Comp. Laws, provides that "all civil officers elected by the people  *  *  *  shall, before entering upon duty, give bond

conditioned that they will faithfully and impartially discharge
the duties of their office.  *  *  *  Section 1375 provides that
"every official bond shall be given with at least two sureties.
*  *  *"  These sections were in force as Sections 2, 7, c. 5,
Pol. Code 1877.  The fair import of the expression "give bond"
would seem to be that the officer giving bond should be a party
to the instrument itself; and this is emphasized by the fact that
such bond shall be given "with at least two sureties."  The
term "sureties" contemplates a principal for whom there are
to be sureties, and a bond not signed by any person as princi-
pal can hardly be said to be given with sureties, in the strict
sense of that term; for without the signature of the principal
the persons who execute it nominally as sureties are really
principals, as they are the only parties primarily liable upon
the bond.  The expression "give bond," as used in reference
to official bonds, imports a very different meaning from the ex-
pression "give an undertaking," as used in the sections of the
statute relating to undertakings in provisional remedies, ap-
peals, etc., which are usually executed by sureties only.  And
there is much reason for this distinction.  In the case of the
giving of an official bond, the officer, being required to "sub-
scribe his official oath on the bond," is presumed to be present
when the bond is given, and acting in person in giving the
bond, while undertakings in the class of cases referred to are
frequently, if not generally, given by agents or personal
friends, in the absence of the real principal.  We think, there-
fore, the expression "give bond," as used in Section 1381, was
intended by the legislature to require the officer giving the
bond to be a party to it by executing it.

But, without placing our decision upon this construction
of our statute, we proceed to examine the authorities bearing
upon this question in other states.  This question was fully
considered in Johnston v. Kimball Tp., 39 Mich. 187, in which
Mr. Justice CAMPBELL, speaking for the court, says: "Our
statutes plainly contemplate that the treasurer shall himself be
a party to his own official bond;  *  *  *  and while we are not
prepared to hold that a bond knowingly and intentionally given,

without his concurrent liability, will not bind the obligors, we are of the opinion that when he purports to be obligor, and does not sign the bond, there must be positive evidence that the sureties intended to be bound without requiring his signature, before they can be held responsible. The obligation of a surety cannot fairly be extended beyond the scope of his written contract, inasmuch as under the statute of frauds his agreement must be in writing; and we think that presumptively, at least when the contract which he signs calls for the signature of other parties, the instrument is to be deemed inchoate and imperfect until they sign it." Again he says: "When several names are written as co-obligors, and one of them is called upon to sign it, he does so upon an implied understanding that he can, in case of being held responsible, not only have his right of contribution, but a further right to have it capable of proof and enforcement according to the terms of the contract as it purports to be drawn up." See, also, Hall v. Parker, 39 Mich. 287; Green v. Kindy, 43 Mich. 279, 5 N. W. Rep. 297. In Wells v. Dill, 1 Mart. (N. S.) 592, the court says. "The contract is incomplete until all the parties contemplated to join in its execution affix their names to it, and while in this state cannot be enforced against any of them. The law presumes that the party signing did so upon the condition that the obligors named in the instrument should also sign it, and the failure to comply with their agreement gives him a right to retract." In Russell v. Annable, 109 Mass. 72, the court says: "The instrument is incomplete without the signature of each partner, or proof that the signature affixed [firm name] had the assent and sanction of each of them. The sureties on a bond are not holden if the instrument is not executed by the person whose name is stated as principal therein. It should be executed by all the intended parties." And the court cites Bean v. Parker, 17 Mass. 591, and Wood v. Washburn, 2 Pick. 24. See, also, Bunn v. Jetmore, 70 Mo. 228; Ferry v. Burchard, 21 Conn. 602; Wildcat Branch v. Ball, 45 Ind. 213; Fletcher v. Austin, 11 Vt. 447; Johnson v. Erskine, 9 Tex. 1; City of Sacramento v. Dunlap, 14 Cal. 421; People v. Hartley,

21 Cal. 585. In the case of City of Sacramento v. Dunlap, *supra*, the court, speaking through Mr. Justice FIELD, says: "The liability of the sureties is conditional to that of the principal. They are bound if he is bound, and not otherwise. The very nature of the contract implies this. The fact that their signatures were placed to the instrument can make no difference in its effect. It purports on its face to be the bond of the three. Some one must have written his signature first, but it is to be presumed upon the understanding that the others named as obligors would add theirs. Not having done so, it was incomplete, and without binding obligation upon either." It is true the bond in that case was a joint bond, and Judge FIELD, in referring to the case of State v. Bowman, 10 Ohio, 445, and some other cases holding a contrary doctrine, intimates that, as the bonds in those cases were joint and several, a distinction might be drawn between a joint and a joint and several bond; but in People v. Hartley, *supra*, Mr. Justice FIELD, while holding that the bond in that case was joint, and quoting from his former opinion, cites Bean v. Parker, *supra*, and Wood v. Washburn, *supra*, with other cases, as authority. The bonds, however, in Bunn v. Jetmore, *supra*, and Russell v. Annable, *supra*, were joint and several; and in the Michigan and several other cases cited this distinction is not referred to, but the decisions are placed upon the broad doctrine that the instrument, as delivered, is an incomplete and imperfect instrument, and is not the contract contemplated by the parties, or that the sureties understood they were making when they affixed their signatures to the instrument. To hold that a surety who signs an official bond with the name of the officer named therein as principal intends to be bound, though such named principal may not sign it, is to hold directly in opposition to the probable actual intention of such surety; and to further hold that he must be bound by this incomplete and imperfect instrument, on the presumption that because he did not place it in escrow until executed by the principal, as is held in some of the cases, is to do violence to all reasonable presumptions as to the actual intention of the sureties in such cases. No necessity exists for such

a rule. The obligee always has it in his power to protect him self by requiring the principal to complete and perfect the bond before he accepts it, and thereby protect the sureties as well as himself. If the obligee does not do this, he has no right to complain if his incomplete instrument is not held good. The leading cases opposed to this doctrine are State v. Peck, 53 Me. 284; State v. Bowman, 10 Ohio, 445; Leow v. Stocker, 68 Pa. St. 226; Trustees v. Sheik, 119 Ill. 579, 8 N. E. Rep. 189. The last case cited was decided in 1888, and while the court very fairly reviews the decisions in support of the doctrine laid down in the Michigan, Massachusetts, and Missouri cases, it finally concludes that the doctrine as laid down in the Ohio and Pennsylvania cases enunciates the correct rule. The reasoning of the court in coming to such a conclusion is not satisfactory to us, and, as the doctrine relied on is well stated in that case, we will examine it at some length.

The court says: "If the sureties saw proper to bind themselves without the principal executing the bond and becoming bound, we think they may do so, and their undertaking is one that may be enforced in the court by an appropriate remedy. It may be true that if sureties see proper to bind themselves absolutely without the signature of the principal, though named as such in the instrument, they may do so; but when signing an official bond, with the name of the officer inserted as principal, have the sureties not the right to presume that before the bond is delivered it will be signed by the principal? For what purpose is the name of the officer inserted as a principal in the bond, if he is not expected to sign it? Is there not an implied understanding in such a case that the principal shall execute the bond before its delivery? We think there is, and that the failure to sign the bond on the part of the principal is a fraud upon the sureties. If the obligee seeks to enforce a bond against the sureties which appears upon its face should have been signed by the principal to make it a complete instrument according to its purport, it devolves upon the obligee to show by evidence that the sureties intended to be bound by this incomplete and imperfect instrument, without

the signature of the principal, and that until such proof is made the sureties may stand upon their contract as it is made, and the implied agreement of the principal to complete the instrument by his signature. The insertion of the name of the principal in the bond, and his failure or neglect to sign it, is notice that the bond is incomplete and imperfect, and puts the obligees upon inquiry as to the cause of this omission of the principal's signature, and if the obligee accepts it in this condition he does so with full knowledge that he is accepting an incomplete and imperfect instrument. No doubt the rule is that, if the bond is perfect on its face when delivered, no secret understanding between the sureties and the principal that other persons should sign will avail as a defense, unless actual notice of such an agreement is brought home to the obligee; but when the instrument itself shows that, to be completed and perfected, other parties must sign it, this is notice to the obligee that puts him upon inquiry. Wildcat Branch v. Ball, *supra*; Dair v. U. S., 16 Wall. 1. Again, the court in that case says: "The fact that the principal obligor in the case failed to sign the bond was a mere technicality, which ought not to affect the rights of any of the parties concerned." We cannot assent to this proposition, as we think the failure of a principal to sign an official bond, and become bound in the instrument, is a matter that does affect the rights of the sureties in many important respects. The sureties may have a right against the officer to be reimbursed the amount they are compelled to pay, whether he signs the bond or not, but, as said by the court in Johnston v. Kimball Tp., *supra*: "This may be true, but, if he had signed the bond, he would not only have been estopped by the judgment from contesting his liability, but the sureties could require recourse to his property to satisfy the execution before seizure of theirs. These are not barren advantages." They are not only not barren advantages, but oftentimes of the very greatest importance to sureties. It affords a surety but little comfort to assure him that he can collect money he has been compelled to pay for a principal by the process of long and expensive litigation, when this

could have been avoided by requiring the principal to do what he virtually contracted to do by inserting his name as principal in the instrument, and by requiring the obligee to see that it is done,—see that the instrument he accepts is complete by being executed by all the parties named as such therein. The case of Bollman v. Pacewalk, 22 Neb. 761, 36 N. W. Rep. 134, cited by counsel for respondent, seems to have been decided upon the facts peculiar to that case, as the court in its opinion says: "Where the statute requires a bond to be signed by the principal, or a bond is incomplete on its face when delivered, it is probable that the sureties might insist on a failure to perfect the instrument before delivering it to the obligee; but that question is not before the court, and will not be decided." After a careful review of the authorities, and the reasoning upon which they are based, we think the better rule is that an official bond in which the officer is named as principal, but which is not executed by him, is *prima facie* invalid, and not binding upon the sureties. As this view necessitates a reversal of the judgment, we do not deem it necessary to consider the other questions presented. Judgment reversed, and the cause remanded to the court below for such further proceedings as counsel may be advised, consistent with this opinion. All the judges concurring.