# UNITED STATES

*v.*

# JOSÉ PACHECO GARCÍA.

San Juan, Criminal, No. 354.

Where an illegally constituted grand jury returns an alleged indictment
under which a defendant was arrested and gave bail, and afterwards,
for his failure to appear, the recognizance was forfeited. Held: On
a motion to quash the execution against the bondsmen, that, as there
never had been any legal indictment presented, the court was without
jurisdiction to entertain the cause or to accept bail, and hence no for-
feiture of the recognizance could be entered.

Opinion filed August 9, 1909.

*José R. F. Savage,* attorney for the United States.

*Messrs. Hartzell* and *Rodriguez Serra,* attorneys for the de-
fendant.

RODEY, Judge, delivered the following opinion:

This matter is before us on the motion of Joaquin Cerra and
L. Rivera y Rivera that the execution against them as bonds-
men for the defendant be recalled and canceled, and their bond
in the premises canceled and held for naught. Due oral argu-

United States v. Garcia.

ment was had on the issue raised by the motion, and thereafter the United States attorney filed a brief in the premises.

The facts surrounding the matter are as follows: On April 19th, 1906, an indictment was returned against the defendant José Pacheco García, charging him in the usual statutory language, under the act of March 2d, 1895 (28 Stat. at L. 963, chap. 191, U. S. Comp. Stat. 1901, p. 3178), with having imported lottery tickets from abroad (from the Danish island of Saint Thomas) into the district of Porto Rico. The defendant was immediately arrested and, on the following day, April 20, 1906, was duly arraigned, and pleaded not guilty. Thereupon, bail was fixed for him in the sum of $500, which these movers immediately gave in his behalf.

The condition of the bond given was in these words: "Now the conditions of this obligation are such that, if the said José Pacheco y García shall duly appear before the district court of the United States for the district aforesaid, whenever called upon so to do by the said court in Porto Rico, then and there to answer to a certain indictment duly preferred against him, the said José Pacheco y García, and shall duly abide by any and all orders said court may make in this behalf, attending the sessions of said court, from day to day thereafter, until the final adjudication of said case, then and in that event, this obligation to be void, otherwise to remain in full force and effect."

A month and a half thereafter, on the 9th of July, 1906, the case was set down to be tried seventeen days later, on July the 26th. On the latter date, on motion of the defendant's attorney, the case went to the foot of the docket. On August the 4th, the defendant by his attorney filed a plea in abatement, in and by the first paragraph of which he states that he withdraws his

plea of not guilty theretofore entered to the indictment. Many grounds are alleged in this plea why the indictment should be quashed and the defendant and his bondsmen be discharged. Among the grounds are that the jury box from which the names of the grand jurors were drawn did not contain the names of 300 persons qualified to act. That, under § 800 of the Revised Statutes of the United States, U. S. Comp. Stat. 1901, p. 623, the qualifications of the grand jurors in this court at such time should be as provided in the local statute. That, among such qualifications, is one providing that persons, to be qualified to serve as jurors, shall be taxpayers in the island on not less than $200 worth of property. The plea further sets out that, on the 20th of September, 1904, when the jury box in question was prepared, the jury commission reported that it was impossible to find 300 persons in the island of Porto Rico possessing the qualifications for jury service required by § 186 of the Code of Criminal Procedure of Porto Rico; and that, under date of the 28th of September, 1904, the court ordered said jury commission to complete the depositing of the 300 names in the jury box, as required by law, from the persons possessing all other requirements of the said Code except said property qualifications. The plea further alleged that the grand jury which returned the indictment was illegally constituted, also, because the names deposited in the box were not put there or drawn therefrom as contemplated by law, by two commissioners representing opposing political parties, as required by the United States statute, and that one of such commissioners, the clerk of the court, was a person who professed no political partisanship, etc.

The court has a distinct personal recollection that the reason for sending the case to the foot of the docket on the day set for

United States v. Garcia.

the trial, on July 26th, was because defendant's counsel desired
to move to quash the indictment, which he did, as stated, a few
days later.

We have also a distinct recollection that defendant himself
did not then, and never has, appeared in court, and the court
has understood, from admissions of his counsel to the United
States attorney in open court, that the defendant has not, in
fact, been in the island of Porto Rico since shortly after his
release on bond as aforesaid.

We also have a distinct recollection that counsel for the de-
fendant pressed the court repeatedly for a decision on the issue
raised by the plea in abatement, but was opposed in this effort
by the United States attorney, who insisted that before the court
should pass upon that issue the defendant himself should be
produced in court.

Whether the defendant has absconded, leaving his bond to be
forfeited, or is simply remaining away to avoid rearrest, the
court is unable to state. However, it is certain that, after the an-
nouncement of the decision of the Supreme Court in Crowley v.
United States, 194 U. S. 461, 48 L. ed. 1075, 24 Sup. Ct. Rep.
731, it was conceded by the then United States attorney for Por-
to Rico that the grand jury which returned the indictment in
question, as well as many other indictments, was in fact illegally
constituted. However, Congress having shortly thereafter, on
June 25, 1906 (34 Stat. at L. 466, chap. 3542), changed the
law regarding the qualifications of persons to serve as jurors in
this court, so as to eliminate the property qualification, etc., all
the indictments then pending returned by said illegally con-
stituted grand jury were either dismissed on motion to quash
or on plea in abatement, and new indictments returned by a
grand jury impaneled under the new law.

United States v. Garcia.

In the case at bar, matters stood without any adjudication upon the plea in abatement, and, on the 10th of April, 1907, a new indictment was found against the defendant, so that he might still be held in case the plea in abatement should be sustained by the court.

From time to time, efforts were made to have the defendant produced in court, but his counsel had the matter delayed on one excuse or another for a considerable period. On May 21, 1907, the United States attorney had the defendant and his bondsmen under the old indictment called, and, upon defendant's failure to appear and the failure of his bondsmen to produce him, the bond was declared forfeited, and thereafter a writ was issued on the judgment, which this motion seeks to set aside.

It will thus be seen that the contention here is that these bondsmen are bound to produce the body of the defendant under their contract, the intention being, of course, to immediately rearrest him on the new indictment.

We are well aware that ordinarily, when a motion to quash or a plea in abatement to an indictment is sustained, it is the province of the court, on a proper showing and motion in that behalf, to order the defendant into custody until a new grand jury shall have an opportunity to pass upon his case, that is, in cases where the defendant is in court or within the jurisdiction. We are also aware that it is under certain circumstances proper, and is ordinarily the mode of procedure for a court, when a grand jury fails to indict on the evidence produced before it, for the prosecutor to make a showing and move the court to hold the defendant for a succeeding grand jury. But after an examination of the authorities we have concluded that, where the

United States v. Garcia.

defendant is arrested on an absolutely illegal indictment, returned by an illegally constituted grand jury, and gives bond for his appearance, no judgment can thereafter be entered on such bond for failure of the defendant to appear and answer the same. We, of course, understand that "in a criminal prosecution the court will not hear the motion to quash the indictment until the defendant has been taken." United States v. Taylor, 4 Cranch, C. C. 731, Fed. Cas. No. 16,437. But that is not the situation here; in this case the defendant was in fact arrested and committed, and thereafter gave bond as stated.·

It appears to be the law that the **right to** give bond in a criminal prosecution is constitutional **or statutory,** and where no crime has been legally charged, as is the case where an illegally constituted grand jury returns an alleged indictment, no right exists in any court to take bail in the premises. The bond or recognizance thus taken is void. State v. Kruise, 32 N. J. L. 313. It is not good even as a mere common-law bond between the parties, as is often the case in civil matters. See Williams v. Shelby, 2 Or. 144; also Johnson v. Erskine, 9 Tex. 1.

"It has been held that where an indictment is fatally defective, there can be no breach of a recognizance to appear or answer." Clark, Crim. Proc. pp. 99, 100. "There are many cases, however, to the effect that sureties on a bail bond cannot question the validity of the indictment unless it was insufficient to confer jurisdiction, as where it was found by an illegally constituted grand jury." Ibid.

A case directly in point is that of Wells v. State. It is from the court of appeals of Texas, and is reported in 21 Tex. App. 594, 2 S. W. Rep. p. 806. It uses this language: "Another objection fatal to the judgment in this case is that the pre-

United States v. Garcia.

tended indictment, under which the proceedings of forfeiture have been had, was in fact not an indictment; the same having been presented by an illegal body composed of thirteen persons. It was not the act of a legal grand jury, and conferred no jurisdiction upon the court or its officers to require of the defendant a bail bond or recognizance; and hence any bail bond or recognizance given by him in such proceedings was without authority of law, and void; and so would be any proceeding had in the cause. Lott v. State, 18 Tex. App. 627; Rainey v. State, 19 Tex. App. 479. While it is settled law that a surety upon a bail bond or recognizance will not be heard to question the sufficiency of an indictment after judgment nisi (State v. Rhodius, 37 Tex. 165; State v. Franklin, 35 Tex. 497; State v. Ake, 41 Tex. 166; State v. Cox, 25 Tex. 404; Hester v. State, 15 Tex. App. 418), this rule does not apply to a case like the one before us, where there was in fact no indictment, and where the court had not acquired jurisdiction of the case (Brown v. State, 6 Tex. App. 188).

It will of course be urged that the court has not even at this writing sustained the plea in abatement, and that therefore it is not certain that the indictment is void. This will not do, because the court must take judicial notice of its own records and of facts concerning the grand juries impaneled by it. It has been repeatedly held by the Supreme Court of the United States that courts of the United States will at any time take cognizance of their own lack of jurisdiction. Hence, an order will be entered sustaining the plea in abatement to the indictment and discharging the defendant and his bond, and another order will be entered recalling the execution from the hands of the marshal and canceling the same, and an order will be

entered setting aside the forfeiture of the bond, as may be proper.